Honorable Ricardo S. Martinez

1

2

3

4

5

6

7

8

9                       UNITED STATES DISTRICT COURT

10                     WESTERN DISTRICT OF WASHINGTON

                                  AT SEATTLE

11

12  LAVERA SKIN CARE NORTH AMERICA,         No. 2:13-cv-02311-RSM
    INC., a Washington corporation; and VICTOR
13  TANG, an individual,                    DEFENDANT'S MOTION TO DISMISS
                                            PLAINTIFFS' COMPLAINT FOR
14                                          *FORUM NON CONVENIENS* AND LACK
                   Plaintiffs,              OF PERSONAL JURISDICTION
15
             v.                             Note on Motion Calendar:  May 16, 2014
16
17  LAVERANA GMBH & CO. KG, a German        Oral Argument Requested
    limited partnership,
18
                   Defendant.
19

20

21

22

23

24

25

26

27

LATHAM & WATKINS LLP
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600

1

<u>**TABLE OF CONTENTS**</u>

2

**Page**

3

I.      INTRODUCTION ...................................................................................1

4

II.     FACTUAL BACKGROUND .................................................................3

5

        A.      Defendant Is a German Entity.....................................................3

6

        B.      Plaintiffs Are Washington Entities With Significant German Connections...........4

7

        C.      Plaintiff LSC's Contract Claims Arise From the Distribution Agreement.............4

8

        D.      Plaintiffs Seek Declaratory Judgment Under the Distribution Agreement.............5

9

        E.      The Parties Attempted to Resolve This Dispute in Germany. ................................6

10

        F.      The Pending Litigation. ................................................6

11

III.    ARGUMENT ................................................................6

12

        A.      The Court Should Dismiss the Action on *Forum Non Conveniens* Grounds.........6

13

14

                1.      Germany Provides an Adequate Alternative Forum...................................8

15

                2.      The Private Interest Factors Weigh in Favor of Dismissal. .......................9

16

                        a.      Germany Is the Most Convenient Forum for the Parties. .............10

17

                        b.      Compulsory Process Is Unavailable for German Witnesses..........12

18

19
                        c.      A Judgment in This Case Is Likely Unenforceable in Germany.....................13

20

                3.      The Public Interest Factors Weigh in Favor of Dismissal. .......................13

21

                        a.      German Courts Are Better Suited to Apply German Law.............14

22

                        b.      Washington Has No Material Interest in This Action. .................16

23

                        c.      Washington's Juries and Courts Should Not Be Burdened. ..........16

24

                        d.      German Courts Are Not Congested. ...............................................17

25

                        e.      German Litigation Would Be More Cost Effective.......................17

26

27

MOTION TO DISMISS
NO. 2:13-cv-02311-RSM

i

**LATHAM & WATKINS LLP**
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600

B.      The Court Should Dismiss This Case for Lack of Personal Jurisdiction...............18

        1.      Plaintiff Cannot Establish General Jurisdiction Over Defendant. .............18

        2.      Plaintiff Cannot Establish Specific Jurisdiction Over Defendant.............19

                a.      Defendant Did Not Purposefully Avail Itself to
                        Washington. ...................................................................................19

                b.      The Assertion of Jurisdiction Would Be Unreasonable................21

C.      Plaintiff Tang's Claim for Declaratory Relief Should Be Dismissed....................23

        1.      Plaintiff Tang's Claim Are Subject to the Forum-Selection Clause..........23

        2.      The Court Lacks Jurisdiction Over Claims Unrelated to the
                Contract..................................................................................................24

IV.     CONCLUSION.............................................................................................24

MOTION TO DISMISS
No. 2:13-cv-02311-RSM

ii

LATHAM & WATKINS LLP
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600

# <u>TABLE OF AUTHORITIES</u>

Page

## CASES

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
    368 F.3d 1174  (9th Cir. 2004) ................................................................... 24

*Amoco Egypt Oil Co. v. Leonis Navigation Co.*,
    1 F.3d 848 (9th Cir. 1993) ........................................................................... 22

*Atl. Marine Constr. Co. v. U.S. Dist. Ct.*,
    134 S. Ct. 568 (2013) ................................................................. 1, 2, 7, 8, 9, 14

*BBC Chartering & Logistic GmbH & Co. K.G. v. Siemens Wind Power*,
    No. 06-1169, 2008 U.S. Dist. LEXIS 2986 (S.D. Tex. Jan. 15, 2008) ................ 12

*Boston Telecomm. Grp., Inc. v. Wood*,
    588 F.3d 1201 (9th Cir. 2009) ....................................................................... 13

*Carideo v. Dell, Inc.*,
    706 F. Supp. 2d 1122 (W.D. Wash. 2010) ................................................ 14, 15

*Coe v. Philips Oral Healthcare, Inc.*,
    No. 13-518, 2014 U.S. Dist. LEXIS 19186 (W.D. Wash. Feb. 14, 2014) ............ 21

*Comerica Bank v. Whitehall Specialties, Inc.*,
    352 F. Supp. 2d 1077 (C.D. Cal. 2004) ........................................................ 23

*Deirmenjian v. Deutsche Bank, A.G.*,
    No. 06-774, 2006 U.S. Dist. LEXIS 96772 (C.D. Cal. Sept. 11, 2006) ........... 9, 17

*Detwiler v. U.S. Dist. Ct.*,
    305 F. App'x 353 (9th Cir. 2008) ............................................................ 14, 15

*Exp. Global Metals, Inc. v. Memking Recycling Grp., LLC*,
    No. 13-747, 2013 U.S. Dist. LEXIS 154379 (D. Or. Sept. 26, 2013) ................ 20

*Facebook, Inc. v. Studivz LTD*,
    No. 08-3468, 2009 U.S. Dist. LEXIS 40941 (N.D. Cal. May 4, 2009) ................ 9

*Gering v. Fraunhofer-Gesellschaft e.V.*,
    No. 05-73458, 2009 U.S. Dist. LEXIS 81812 (E.D. Mich. Sept. 9, 2009) ............ 17

*Glud & Marstrand A/S v. Microsoft Corp.*,
    No. 05-1563, 2006 U.S. Dist. LEXIS 62363 (W.D. Wash. Aug. 15, 2006) ........... 24

*Graham Tech. Solutions v. Thinking Pictures*,
    949 F. Supp. 1427 (N.D. Cal. 1997) ............................................................ 23

MOTION TO DISMISS
No. 2:13-cv-02311-RSM

iii

**LATHAM & WATKINS LLP**
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600

*Gray & Co. v. Firstenberg Mach. Co.*,
  913 F.2d 758 (9th Cir. 1990) ................................................................... 19

*Growden v. Ed Bowlin & Assocs., Inc.*,
  733 F.2d 1149 (5th Cir. 1984) ................................................................. 20

*Hirsch v. Blue Cross, Blue Shield*,
  800 F.2d 1474 (9th Cir. 1986) ........................................................... 18, 19

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*,
  485 F.3d 450 (9th Cir. 2007) ........................................................... 20, 23

*J. McIntyre Mach., Ltd. v. Nicastro*,
  131 S. Ct. 2780 (2011) ............................................................................ 21

*Leetsch v. Freedman*,
  260 F.3d 1100 (9th Cir. 2001) ............................................................ 9, 15

*Loya v. Starwood Hotels & Resorts*,
  No. 06-0815, 2007 U.S. Dist. LEXIS 49012 (W.D. Wash. July 6, 2007) ........................... 16

*Lueck v. Sundstrand Corp.*,
  236 F.3d 1137 (9th Cir. 2001) ....................................................... 6, 9, 10

*Mattel, Inc. v. Greiner & Hausser GmbH*,
  354 F.3d 857 (9th Cir. 2003) ............................................................. 9, 22

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ................................................................. 19

*McGinley v. Magone Marine Serv.*,
  No. 13-1678, 2013 U.S. Dist. LEXIS 169805 (W.D. Wash. Dec. 2, 2013) ........................ 18

*McGlinchy v. Shell Chem. Co.*,
  845 F.2d 802 (9th Cir. 1988) ................................................................. 21

*McKee v. AT&T Corp.*,
  191 P.3d 845 (Wash. 2008) ................................................................... 14

*Monje v. Spin Master Inc.*,
  No. 09-1713, 2013 U.S. Dist. LEXIS 75330 (D. Ariz. May 29, 2013) ........................... 21

*Murphy v. Schneider Nat'l Inc.*,
  362 F.3d 1133 (9th Cir. 2003) ................................................................. 7

*Myers v. Bennett Law Offices*,
  238 F.3d 1068 (9th Cir. 2001) ................................................................. 22

MOTION TO DISMISS
No. 2:13-cv-02311-RSM

iv

**LATHAM & WATKINS LLP**
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600

*Nextrade, Inc. v. Hyosung, Inc.*,
  122 F. App'x 892 (9th Cir. 2005) ........................................................................ 23

*Pac. Atl. Trading Co. v. M/V Main Express*,
  758 F.2d 1325 (9th Cir. 1985) ........................................................................... 22

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ...................................................................... 18, 19

*Singletary v. B.R.X., Inc.*,
  828 F.2d 1135 (5th Cir. 1987) .......................................................................... 20

*Sparling v. Hoffman Constr. Co.*,
  864 F.2d 635 (9th Cir. 1988) ............................................................................ 14

*Steelman Partners, LLP v. Sanum Invs. Ltd.*,
  No. 12-198, 2013 U.S. Dist. LEXIS 39436 (D. Nev. Mar. 21, 2013) ................ 21

*Stellia Ltd. v. B+S Card Serv. GmbH*,
  No. 12-1099, 2013 U.S. Dist. LEXIS 171632 (D. Nev. Dec. 5, 2013) ....... 9, 12, 15

*Tuazon v. R.J. Reynolds Tobacco Co.*,
  433 F.3d 1163 (9th Cir. 2006) ....................................................................... 8, 14

*U.S. Vestor, LLC v. Biodata Info. Tech. AG*,
  290 F. Supp. 2d 1057 (N.D. Cal. 2003) ............................................................ 13

*Van Cauwenberghe v. Biard*,
  486 U.S. 517 (1988) ............................................................................................ 7

*Vivendi S.A. v. T-Mobile USA, Inc.*, No. 06-1524,
  2008 U.S. Dist. LEXIS 118529 (W.D. Wash. June 5, 2008) .............................. 15

*Wash. Shoe Co. v. A-Z Sporting Goods Inc.*,
  704 F.3d 668 (9th Cir. 2012) ...................................................................... 18, 21

## STATUTES

Wash. Rev. Code § 4.28.185(5) .............................................................................. 18

## RULES

Fed. R. Civ. P. 45(b)(3) .......................................................................................... 12

Fed. R. Civ. P. 45(c) ............................................................................................... 12

LATHAM & WATKINS LLP
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600

## DEFENDANT'S MOTION TO DISMISS

**I.    INTRODUCTION**

Defendant Laverana GmbH & Co. KG ("Defendant") hereby moves to dismiss the Complaint brought by Plaintiffs Lavera Skin Care North America, Inc. ("LSC") and Victor Tang (collectively, "Plaintiffs") based on *forum non conveniens* and for lack of personal jurisdiction.

This matter belongs in Germany:  Plaintiffs are accusing a German Defendant of breaching a German-language contract that is governed by German law and contains a forum-selection clause designating Germany.  Where, as here, the parties have contractually agreed to resolve their disputes in an adequate alternative forum outside the United States, controlling Supreme Court precedent requires dismissal absent "extraordinary circumstances."  *See Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 134 S. Ct. 568, 575 (2013).  There are no "extraordinary" legal or factual circumstances justifying adjudication of this dispute in Washington instead of Germany.  On the contrary, public and private factors overwhelmingly favor litigation in Germany.  Indeed, when this dispute first arose, Plaintiff LSC and Defendant engaged in mediation proceedings in Germany with the assistance of a German mediator.  After Plaintiff LSC terminated the mediation, however, Plaintiffs filed suit in this Court, more than 5,000 miles away from Germany, in a forum to which Defendant has no material connection—in violation of the Distribution Agreement's forum-selection clause.  Plaintiffs filed suit in this Court solely to gain a tactical advantage over a foreign defendant.

Defendant is a German limited partnership that manufactures natural cosmetics in Germany.  By design, Defendant's production operations are entirely within Germany.  Defendant and its shareholders are all German entities and citizens, with no business facilities, employees, or physical presence in Washington or the United States.  Defendant's products first became available in the United States when Plaintiff LSC's founders Ulrike Jacob and Andreas Dewor approached Defendant in Germany with a proposal to allow LSC to distribute Defendant's products in North America.  The parties' distribution agreement, which was renewed in 2008 to cover the United States and Canada (the "Distribution Agreement"),

MOTION TO DISMISS
No. 2:13-cv-02311-RSM

1

**LATHAM & WATKINS LLP**
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600

1   expressly requires that Plaintiff LSC take possession of Defendant's products from Defendant's

2   premises in Germany, and then import and sell the products in the United States and Canada at

3   LSC's sole discretion.  Based on the Distribution Agreement and Defendant's lack of any

4   material connection to Washington, this case must be dismissed under the doctrine of *forum non*

5   *conveniens* and for lack of personal jurisdiction.

6         *First*, the Complaint should be dismissed on *forum non conveniens* grounds because

7   considerations of convenience and judicial economy overwhelmingly favor litigation in

8   Germany.  This is not a close call.  Given the valid forum-selection clause in the Distribution

9   Agreement, the Supreme Court's recent decision in *Atlantic Marine* places the burden on

10  Plaintiffs to demonstrate "extraordinary circumstances" to avoid dismissal.  No such

11  circumstances exist in this case.  Plaintiffs cannot seriously contend that Germany is not an

12  adequate alternative forum for these proceedings:  after all, German courts have jurisdiction over

13  Defendant and routinely decide and provide remedies in contractual disputes.  Particularly since

14  the Distribution Agreement requires the application of German law to a German language

15  contract, German courts are better situated to adjudicate this dispute.  Moreover, the parties have

16  a strong connection to Germany; crucial witnesses are located in Germany beyond the Court's

17  subpoena power; a judgment in this Court is unlikely to be enforceable in Germany; and

18  Plaintiffs have demonstrated through their activities in Germany that the forum would not be

19  unduly inconvenient.  Indeed, Plaintiff LSC has already threatened to pursue another claim under

20  German law if its Complaint fails on the merits in this Court.  The balance of private and public

21  interest factors strongly favors litigation in Germany, and Plaintiffs' action should be dismissed

22  based on the doctrine of *forum non conveniens*.

23        *Second*, Defendant is not subject to personal jurisdiction in Washington.  For personal

24  jurisdiction to attach, Plaintiffs must demonstrate that Defendant's contacts with Washington

25  either approximated "physical presence" within the state or constituted "purposeful availment" in

26  connection with Plaintiffs' claims, *and* it must be "reasonable."  Plaintiffs cannot meet these

27  standards.  The Distribution Agreement is the sole basis for Plaintiffs' claims and the sole

MOTION TO DISMISS
No. 2:13-cv-02311-RSM

2

**LATHAM & WATKINS LLP**
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600

material contact Defendant had with the United States.  Defendant, however, did not purposefully avail itself to the Washington forum through the Distribution Agreement, which limits Defendant's obligations to making its products available to Plaintiff LSC in Germany; selects Germany as the forum for any litigation; and provides Defendant with no control over where or how Plaintiff LSC marketed or sold the products in the United States.  Defendant did not direct its activities into the Washington forum, and there was no requirement that any sales occur in Washington (as opposed to elsewhere in the United States) under the Distribution Agreement.  It would be manifestly unreasonable to hail Defendant into court in Washington given its minimal contacts with the forum.  Accordingly, Plaintiffs' claims should be dismissed for lack of personal jurisdiction.

## II.      FACTUAL BACKGROUND

### A.      Defendant Is a German Entity.

Defendant is a German limited partnership in the business of developing, producing, and selling natural cosmetics from its principal place of business in Germany.  (Declaration of Thomas Haase ("Haase Decl.") ¶ 3.)  Defendant does not have facilities in Washington.  (Haase Decl. ¶ 4.)  Indeed, Defendant has no offices, address, phone number, bank accounts, employees, officers, directors, or employees anywhere in the United States.  (*Id.*)  Defendant also does not directly sell, solicit, or engage in business in Washington, nor does it have any agent for service, hold any license, or have any incorporated status in Washington or the United States.  (*Id.* ¶¶ 5-6.)  Defendant has never litigated in Washington or the United States.  (*Id.* ¶ 6.)

Defendant's ultimate shareholder (Thomas Haase), unlimited liability shareholders (Claudia Haase and Haase Verwaltungs GmbH), limited liability shareholder (Laboratorium für natürliche Körperpflegemittel Krystyna Chernes-Haase GmbH & Co. KG), and corporate predecessor (Laverana GmbH), are all German citizens or entities.  (Haase Decl. ¶¶ 7-8.)  None of these individuals and entities has offices, addresses, phone numbers, bank accounts, officers, directors, or employees in Washington or the United States.  (*Id.* ¶ 8.)  Defendant's ultimate shareholder (Mr. Haase) has never been to the State of Washington, and has not been to the

MOTION TO DISMISS
No. 2:13-cv-02311-RSM

3

LATHAM & WATKINS LLP
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600

1   United States since 2002.  (*Id.* ¶ 10.)  Defendant's principals are not fluent in English, and they

2   would require a translator if litigation is conducted in this Court.  (*Id.* ¶ 11.)

3   **B.   Plaintiffs Are Washington Entities With Significant German Connections.**

4   Plaintiff LSC is a Washington corporation, and Plaintiff Tang is a Washington resident.

5   (Compl. ¶¶ 1-2.)  Plaintiff LSC's founders, Ulrike Jacob and Andreas Dewor, are believed to be

6   German citizens and to have lived in Germany.  (Haase Decl. ¶¶ 12-13.)  Ms. Jacob and Mr.

7   Dewor are both fluent in German.  (*Id.* ¶ 14.)  Ms. Jacob and Mr. Dewor were married, but later

8   divorced.  (*Id.* ¶ 12.)  Subsequently, Ms. Jacob married Plaintiff Tang.  (*Id.* ¶ 16.)

9   Prior to 1999, Plaintiffs allege that Defendant "never sold or marketed its products in the

10   United States."  (Compl. ¶ 5.)  In 1999, Defendant allegedly entered into a distribution

11   agreement with Plaintiff LSC's predecessor, which was operated by Ms. Jacob and Mr. Dewor

12   from Germany.  (*Id.*; Haase Decl. ¶ 15)  Operating in Germany, LSC's predecessor purchased

13   Defendant's products, shipped them into the United States, and sold them here.  (Haase Decl.

14   ¶ 15.)  Ms. Jacob and/or Mr. Dewor later chose to move the business to the United States.  (*Id.*)

15   **C.   Plaintiff LSC's Contract Claims Arise From the Distribution Agreement.**

16   In 2008, Defendant and Plaintiff LSC entered into distribution contracts that covered the

17   United States and Canada.  (Compl. ¶ 5; Haase Decl. ¶ 17.)  The Distribution Agreement at

18   issue[1] was negotiated, drafted, and executed in Germany between Defendant, a German entity,

19   and Plaintiff LSC, which founders, Ms. Jacob and Mr. Dewor, were both German citizens during

20   that period.  (Haase Decl. ¶¶ 13, 17-19, Ex. 2 at 16.)  The agreement provides that "German law

21   shall be applicable except for the conflict of laws provisions and the provisions of the Private

22   International Law."  (*Id.* ¶ 17, Ex. 2 § 13(a).)  The agreement further provides that "[t]he place of

23   jurisdiction shall be Hanover, Germany."  (*Id.*, Ex. 2 § 13(b).)  The contract was drafted in

24   German and English but provides that only "the German version shall be binding."  (*Id.*, Ex. 2

25   § 15.)

26

27   [1]   The substantive provisions of the two distribution agreements for the United States and Canada are nearly
identical.  (Haase Decl. ¶ 17, Exs. 2-3.)  References are limited to the U.S. agreement unless otherwise noted.

The Distribution Agreement granted Plaintiff LSC the "right to market and sell Laverana products in the United States and Canada." (Compl. ¶ 5.)  Under the agreement, Defendant had no obligation to deliver or ship its products into the United States.  Instead, the Distribution Agreement provides that Plaintiff LSC shall insure and be solely responsible for the transportation of all goods "ex works" from Germany—which means that Defendant's delivery obligations ended when it placed the goods at the disposal of Plaintiff LSC at Defendant's premises in Germany.  (Haase Decl. ¶ 17, 20, Ex. 2 § 3(j) ("The export partner shall insure and pay for the transportation (ex works).").)  From there, Plaintiff LSC would sell the products "for his own account, in his own name, and at his own risk on the U.S. market."  (*Id.*, Ex. 2 § 1(d).)  Defendant had no control over where Plaintiff LSC would decide to sell.  (*Id.*)

Plaintiff LSC alleges that Defendant breached the Distribution Agreement by, among other things, wrongfully terminating the agreement and ceasing performance thereunder on March 27, 2013.  (Compl. ¶¶ 8-13.)  The Complaint alleges five causes of action:  (1) breach of contract; (2) breach of covenants of good faith and fair dealing; (3) breach of fiduciary duty; (4) breach of warranty; and (5) declaratory relief.  (*Id.* ¶¶ 19-37.)  All of these claims are based on the Distribution Agreement.  (*Id.* ¶¶ 20-21, 23-26, 28-30, 32-34, 36.)

### D.   Plaintiffs Seek Declaratory Judgment Under the Distribution Agreement.

Plaintiff Tang joins Plaintiff LSC's declaratory relief claim, and does not assert any other cause of action.  (Compl. ¶ 37.)  Tang is the husband of LSC's founder and chairperson, Ms. Jacob.  (Haase Decl. ¶ 16.)  He is also an officer of LSC.  (*Id.*)  Plaintiff Tang allegedly purchased the "lavera.com" domain name (the "Domain Name") from a third party, and licensed its use to his wife and/or LSC.  (Compl. ¶ 15.)  Plaintiffs' declaratory relief claim, like Plaintiff LSC's other claims, depends on whether Defendant validly terminated the Distribution Agreement.  The Distribution Agreement granted Plaintiff LSC the right to use various trademarks of Defendant for the period in which the agreement remains in effect.  (*Id.* ¶ 16.)  Plaintiffs argue that "[b]ecause the Distribution Agreement . . . has not been validly terminated by [Defendant], Tang and LSC's use of the [Domain Name] does not violate Defendant's

MOTION TO DISMISS
No. 2:13-cv-02311-RSM

5

**LATHAM & WATKINS LLP**
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600

1    trademark rights." (*Id.* ¶ 17.)  Plaintiffs claim a continuing "right to use the [Domain Name]

2    according to the terms and conditions of the Distribution Agreement." (*Id.* ¶¶ 37-38.)

3    **E.     The Parties Attempted to Resolve This Dispute in Germany.**

4    Prior to the filing of this action, Defendant and Plaintiff LSC participated in mediation in

5    Germany.  (Declaration of Björn-Axel Dissars ("Dissars Decl.") ¶ 8; Haase Decl. ¶ 27.)  Plaintiff

6    LSC was represented by German counsel in connection with the mediation, which occurred

7    before a German mediator qualified in German law.  (*Id.*)  Plaintiff LSC ultimately terminated

8    the mediation.  (*Id.*)  Subsequently, on March 27, 2013, Defendant sent a notice terminating the

9    Distribution Agreement for good cause.  (Haase Decl. ¶ 28, Ex. 4.)  Plaintiff LSC's German

10   counsel then asked Defendant's German counsel to accept service of their lawsuit, and, based on

11   the understanding that the lawsuit would be filed in Germany, Defendant agreed that its German

12   counsel could accept service.  (Dissars Decl. ¶¶ 10-14, Exs. 3, 5.)

13   **F.     The Pending Litigation.**

14   On December 26, 2013, Plaintiffs filed this lawsuit in this Court, in contravention of the

15   Distribution Agreement's forum-selection clause.  (ECF No. 1.)

16   On March 26, 2014, notwithstanding the pending Complaint in this Court, Plaintiff LSC

17   sent notice to Defendant regarding a potential claim under German law for agent compensation

18   (*Handelsvertreterausgleichsanspruch*) under the Distribution Agreement, in the event that

19   litigation proceeds in this Court and Defendant's termination of the Distribution Agreement is

20   found to be valid.  (Dissars Decl. ¶ 15, Ex. 10.)

21   **III.   ARGUMENT**

22   **A.     The Court Should Dismiss the Action on *Forum Non Conveniens* Grounds.**

23   This action—based on a German-language contract that provides for the application of

24   German law and adjudication of disputes in a German forum—belongs in Germany.

25   Under the doctrine of *forum non conveniens*, "[a] district court has discretion to decline

26   to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient

27   for the parties." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001).  The

1   traditional *forum non conveniens* inquiry centered on whether:  (1) there is an adequate

2   alternative forum, and (2) the balance of private and public interest factors favors dismissal.  *Id.*

3   In balancing these factors, courts consider submissions of proof, and do not accept mere

4   allegations in a complaint.  *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 528-29 (1988).  The

5   *forum non conveniens* determination is committed to the "sound discretion of the district court,"

6   whose decision "deserves substantial deference."  *Lueck*, 236 F.3d at 1142.

7           In *Atlantic Marine*, the Supreme Court clarified the standard for dismissing an action on

8   *forum non conveniens* grounds when a valid forum-selection clause is implicated as in this case.[2]

9   (Haase Decl. ¶ 17, Ex. 2 § 13(b) ("The place of jurisdiction shall be Hanover, Germany.").)  In

10  particular, the Supreme Court held that a forum-selection clause should be "given controlling

11  weight in all but the most exceptional cases."  *Atl. Marine*, 134 S. Ct. at 579.[3]  To ensure this

12  result, the Court modified the *forum non conveniens* analysis in three ways:

13          *First*, "the plaintiff's choice of forum merits no weight."  *Atl. Marine*, 134 S. Ct. at 581.

14  "Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of

15  establishing that transfer to the forum for which the parties bargained is unwarranted."  *Id.*

16          *Second*, a court evaluating a defendant's motion based on the forum-selection clause

17  "should not consider arguments about the parties' private interests."  134 S. Ct. at 582.  "When

18  parties agree to a forum-selection clause, they waive the right to challenge the preselected forum

19  as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the

20

21

---

22  [2]       Forum-selection clauses are "presumptively valid."  *Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1140
    (9th Cir. 2003).  "The party challenging the clause bears a 'heavy burden of proof' and must 'clearly show that

23  enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-
    reaching.'"  *Id.*  Plaintiffs cannot rebut the presumptive validity of the forum-selection clause.  Indeed, Plaintiffs do

24  not dispute the validity of the Distribution Agreement, which contains the forum-selection clause; instead, they
    assert that it is valid and the basis for each of their claims.  (Compl. ¶¶ 20, 23, 28, 32, 36.)

25  [3]       The proper means of enforcing a forum-selection clause is through a motion based on Section 1404(a)
    (when the clause points to an alternative federal forum) or the doctrine of *forum non conveniens* (when the clause

26  points to a state or foreign forum).  *See Atl. Marine*, 134 S. Ct. at 580.  The same standards apply to either motion.
    *See id.* at 583 n.8.  The relevant difference is that a Section 1404(a) motion requires transfer of the action to an

27  alternative federal forum, while a *forum non conveniens* motion requires dismissal outright.  *See id.*

1   litigation." *Id.*  Accordingly, the district court's considerations are limited to public interest

2   factors, which will "rarely" defeat dismissal.  *Id.*

3       *Third*, "when a party bound by a forum-selection clause flouts its contractual obligation

4   and files suit in a different forum," a *forum non conveniens* motion "will not carry with it the

5   original venue's choice-of-law rules."  *Id.*

6       The "practical result [of these changes] is that forum-selection clauses should control

7   except in unusual cases."  *Atl. Marine*, 134 S. Ct. at 582.  Although it is "conceivable in a

8   particular case" that the district court would deny a *forum non conveniens* motion, "such cases

9   will not be common."  *Id.*  A defendant's motion based on a forum-selection clause should be

10  granted "unless extraordinary circumstances unrelated to the convenience of the parties clearly

11  disfavor" dismissal.  *Id.* at 574.  The rationale for this rule is simple:

12
13      > When parties have contracted in advance to litigate disputes in a particular forum,
        > courts should not unnecessarily disrupt the parties' settled expectations.  A forum-
14      > selection clause, after all, may have figured centrally in the parties' negotiations
        > and may have affected how they set monetary and other contractual terms; it may,
15      > in fact, have been a critical factor in their agreement to do business together in the
        > first place. In all but the most unusual cases, therefore, "the interest of justice" is
16      > served by holding parties to their bargain.  *Id.* at 583.

17      As explained below, both the traditional and *Atlantic Marine* tests for *forum non*

18  *conveniens* are satisfied in this case:  (1) Germany is an adequate alternative forum; (2) the

19  balance of private factors is deemed established in favor of litigation in Germany (and otherwise

20  demonstrates that Germany is the more convenient forum); and (3) this is not an "extraordinary"

21  case where public interest factors "clearly disfavor" dismissal (instead, the public factors weigh

22  in favor of dismissal).  Accordingly, this case should be dismissed in favor of a German forum.

23          **1.      Germany Provides an Adequate Alternative Forum.**

24      Germany indisputably provides an adequate alternative forum for this action.  An

25  alternative forum is adequate for *forum non conveniens* purposes "where the defendant is

26  amenable to service of process and the forum provides 'some remedy' for the wrong at issue."

27  *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006).  "This test is easy to

MOTION TO DISMISS
NO. 2:13-cv-02311-RSM

8

**LATHAM & WATKINS LLP**
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600

1   pass; typically, a forum will be inadequate only where the remedy provided is 'so clearly

2   inadequate or unsatisfactory, that it is no remedy at all.'"  *Id.*; *accord Lueck*, 236 F.3d at 1143.

3          This low bar is easily satisfied in this case.  First, Defendant is a German limited

4   partnership that is amenable to service of process in Germany.  (Haase Decl. ¶ 3; Dissars Decl.

5   ¶ 16.)  Second, Germany provides an adequate remedy for the allegations in the Complaint.  In

6   particular, the German legal system provides a remedy in contractual disputes for damages,

7   including lost profits, pre-judgment interest, attorneys' fees, and declaratory relief and judgment,

8   as requested by Plaintiffs.  (Dissars Decl. ¶¶ 17-20.)  The German legal system also affords

9   Plaintiffs—and all domestic and foreign litigants—safeguards comparable to those available in

10  the United States, including the right to an independent, impartial, and fair decision in

11  accordance with the law, the right for all parties to be heard, and the right to a fair trial.  (*Id.*

12  ¶¶ 21-25.)  Quite simply, there is no legal obstacle to Plaintiffs bringing their suit in Germany.

13         Indeed, as a general rule, Ninth Circuit courts hold that Germany is an adequate

14  alternative forum for litigation.  *See Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 868

15  (9th Cir. 2003) ("Germany provides an adequate forum for resolving disputes"); *Leetsch v.*

16  *Freedman*, 260 F.3d 1100, 1103 (9th Cir. 2001) ("the German court offered an adequate

17  alternative forum"); *Stellia Ltd. v. B+S Card Serv. GmbH*, No. 12-1099, 2013 U.S. Dist. LEXIS

18  171632, at *8 & n.3 (D. Nev. Dec. 5, 2013) ("Germany provides an adequate alternative

19  forum"); *Deirmenjian v. Deutsche Bank, A.G.*, No. 06-774, 2006 U.S. Dist. LEXIS 96772, at *37

20  (C.D. Cal. Sept. 11, 2006) ("Germany is an adequate forum"); *Facebook, Inc. v. Studivz LTD*,

21  No. 08-3468, 2009 U.S. Dist. LEXIS 40941, at *7 (N.D. Cal. May 4, 2009) ("Germany clearly is

22  an adequate forum.").  Accordingly, this threshold factor for dismissal is satisfied.

23                    **2.      The Private Interest Factors Weigh in Favor of Dismissal.**

24         In *Atlantic Marine*, the Supreme Court held that the existence of a forum-selection clause

25  means that the balance of private interest factors is deemed to weigh in favor of dismissal as a

26  matter of law.  *See* 134 S. Ct. at 582 ("A court . . . must deem the private-interest factors to

27  weigh entirely in favor of the preselected forum" where there is a forum-selection clause.).

1    Specifically, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge

2    the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for

3    their pursuit of the litigation.  *Id.*  Because the Distribution Agreement contains a forum-

4    selection clause (Haase Decl. ¶ 17, Ex. 2 § 13(b)), the Court's sole remaining consideration is

5    whether this case is one of the "rare[ ]" cases where the balance of public interest factors will

6    defeat dismissal of this *forum non conveniens* motion.  *See* 134 S. Ct. at 582.

7          Even if this Court were to reach the private interest factors—which it need not do under

8    *Atlantic Marine*—the balance of private interests overwhelmingly weighs in favor of litigation in

9    Germany as opposed to Washington.  Private interest factors include:  "(1) the residence of the

10   parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical

11   evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify;

12   (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) 'all

13   other practical problems that make trial of a case easy, expeditious and inexpensive.'"  *Lueck*,

14   236 F.3d at 1145.  These private interest factors decisively favor litigation in Germany over

15   Washington.

16                    a.        **Germany Is the Most Convenient Forum for the Parties.**

17         The first three private interest factors, which balance the relative convenience of

18   competing fora to the parties, weigh heavily in favor of litigation in Germany.  Plaintiff LSC's

19   principals formerly lived in Germany, speak fluent German, and regularly travel to Germany for

20   business.  In comparison, neither Defendant nor its shareholders has any connection to

21   Washington—or have even been to Washington during the term of the Distribution Agreement—

22   and Defendant's principals only speak German fluently.

23         Defendant and each of its related entities are German entities and citizens.  (Haase Decl.

24   ¶¶ 3, 8.)  This list includes:  (1) Defendant (a German limited partnership); (2) Defendant's sole

25   ultimate shareholder, Thomas Haase; (3) Defendant's unlimited liability shareholders, Claudia

26   Haase and Haase Verwaltungs GmbH (a German limited liability company); (4) Klara Ahlers

27   (managing director of Haase Verwaltungs GmbH); (5) Defendant's limited liability shareholder,

10

1    Laboratorium für natürliche Körperpflegemittel Krystyna Chernes-Haase GmbH & Co. KG; and

2    (6) Defendant's predecessor, which originally executed the Distribution Agreement, Laverana

3    GmbH (a German limited liability company).  (*Id.* ¶ 8.)

4    　　　Each of these entities, and their shareholders or managing directors, is a German entity or

5    citizen, and resides in Germany with no significant connection to Washington or the United

6    States.  (Haase Decl. ¶¶ 8-9, 32.)  None of these shareholders or managing directors has been in

7    the United States since the Distribution Agreement was executed in 2008.  (*Id.* ¶ 10.)  Defendant

8    performed all of its obligations under the Distribution Agreement from Germany and, when it

9    became necessary, Defendant terminated the Distribution Agreement from Germany.  (*Id.* ¶ 17,

10   Ex. 2 § 3(j); *id.* ¶ 28, Ex. 4.)  Defendant has never litigated in the United States.  (Haase Decl.

11   ¶ 6.)  Defendant's principals are not fluent in English, and they would each require a translator if

12   litigation is conducted in the United States (in English).  (*Id.* ¶ 11.)  Additionally, all

13   documentary evidence belonging to Defendant, including its records regarding the negotiation,

14   execution, performance, and termination of the Distribution Agreement is located in Germany,

15   and is primarily in the German language.  (*Id.* ¶¶ 30-31; Dissars Decl. ¶ 31.)  Accordingly,

16   litigation in the United States would be very inconvenient for these German residents.

17   　　　In contrast, Plaintiff LSC and its founders have had systematic and prolonged contact

18   with Germany dating back well prior to the execution of the Distribution Agreement.  Plaintiff

19   LSC was founded by Ulrike Jacob and Andreas Dewor, who Defendant is informed and believes

20   are both German citizens and fluent in German.  (Haase Decl. ¶¶ 13-14.)  Ms. Jacobs regularly

21   travels to Germany.  (*Id.* ¶ 14.)  Ms. Jacobs is now married to Plaintiff Tang, an LSC officer.

22   (*Id.* ¶ 16.)  Like Defendant, Plaintiff LSC executed the Distribution Agreement in person, in

23   Germany.  (*Id.* ¶¶ 17-19, Ex. 2 at 16.)

24   　　　Plaintiffs have also demonstrated that Germany is not an inconvenient forum based on

25   their prior participation in proceedings in Germany.  Plaintiffs participated in mediation with a

26   German mediator prior to filing this lawsuit.  (Dissars Decl. ¶¶ 24-27.)  Plaintiff LSC was

27   represented by German counsel in connection with this dispute, and correspondence between the

Motion to Dismiss
No. 2:13-cv-02311-RSM

11

**Latham & Watkins LLP**
505 Montgomery St. Ste. 2000
San Francisco, CA 94111
(415) 391-0600

1  parties was primarily in German.  (*Id.* ¶¶ 24-25.)  Plaintiffs filed suit in this Court for no reason
2  other than to gain a tactical advantage over a foreign defendant.

3                       **b.      Compulsory Process Is Unavailable for German Witnesses.**

4          The fourth and fifth private interest factors—weighing the cost and ability to compel
5  witnesses to testify—also heavily favor litigation in Germany.  German courts possess power of
6  compulsory process over witnesses and evidence located in Germany.  (Dissars Decl. ¶ 33; *see*
7  *also Stellia*, 2013 U.S. Dist. LEXIS 171632, at *12 ("Germany possesses compulsory process
8  over these witnesses and evidence" located in Germany).

9          In contrast, the U.S. federal subpoena power is limited, and does not reach German
10  witnesses.  *See* Dissars Decl. ¶ 32; Fed. R. Civ. P. 45(c); *id.* at 45(b)(3); *BBC Chartering &*
11  *Logistic GmbH & Co. K.G. v. Siemens Wind Power*, No. 06-1169, 2008 U.S. Dist. LEXIS 2986,
12  at *12 (S.D. Tex. Jan. 15, 2008) ("the court is unable to compel the attendance of any unwilling
13  nonparty witness who is in Germany").  Accordingly, the Court has no ability to compel the
14  appearance of Defendant's former employees in Germany with relevant testimony.

15          Potential witnesses in connection with this lawsuit include Mr. Haase; Ms. Haase; Ms.
16  Ahlers; Karen Rinne, Defendant's former in-house counsel; and Klaudia Zach, Defendant's
17  current in-house counsel.  (Haase Decl. ¶¶ 32-33.)  Each of these individuals, to Defendant's
18  knowledge, resides in Germany, with no significant connection to the United States or
19  Washington.  (*Id.*)  To Defendant's knowledge, none of the witnesses resides, is employed, or
20  regularly transacts business in the United States, nor is a United States national.  (*Id.*)
21  Accordingly, none of these individuals is subject to the Court's subpoena power.

22          Crucially, this list includes former in-house counsel of Defendant, Karen Rinne.  Ms.
23  Rinne was one of Defendant's primary day-to-day contacts with Plaintiff LSC under the
24  Distribution Agreement between 2011 and March 2012.  (Haase Decl. ¶ 34.)  She would testify
25  to the course of conduct and performance by the parties under the Distribution Agreement.  (*Id.*)
26  But she is not within Defendant's control or this Court's subpoena power for trial.  (*Id.*)  Given
27  the central importance of this nonparty witness in this dispute, litigation in the United States

MOTION TO DISMISS
No. 2:13-cv-02311-RSM

12

**LATHAM & WATKINS LLP**
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600

1   could severely prejudice Defendant's ability to defend itself.  *See Boston Telecomm. Grp., Inc. v.*

2   *Wood*, 588 F.3d 1201, 1209 (9th Cir. 2009) (considering the "materiality and importance" of

3   each witness' testimony rather than simply the "the number of witnesses at each locale").  In

4   contrast, if litigation proceeded in Germany, there would be no issue of compulsory process as to

5   any German resident, including Ms. Rinne.  (Dissars Decl. ¶ 33.)

6                    **c.      A Judgment in This Case Is Likely Unenforceable in Germany.**

7           The sixth private interest factor regarding the enforceability of judgments also favors

8   litigation in Germany.  Any German judgment would be readily enforceable in Germany against

9   Defendant, which has assets and property in Germany.  *See* Dissars Decl. ¶ 39; *U.S. Vestor, LLC*

10  *v. Biodata Info. Tech. AG*, 290 F. Supp. 2d 1057, 1068 (N.D. Cal. 2003) ("Judgments would be

11  enforceable in Germany since all Defendants own property there.").

12          In contrast, a judgment collected in the United States may not be enforceable in

13  Germany.  (Dissars Decl. ¶ 35.)  While Germany has bilateral treaties with many countries,

14  which allow for streamlined recognition of judgments, no such agreement exists between

15  Germany and the United States.  (*Id.* ¶ 36.)  Any United States judgment must first be

16  "recognized" in Germany.  (*Id.* ¶ 37.)  Thus, further petitioning is required *in Germany* to

17  enforce the judgment or reach a German party's assets.  (*Id.* ¶ 38.)

18          Significant barriers are likely to prevent recognition and enforcement of a U.S. judgment.

19  Specifically, the German Code of Civil Procedure prevents a German court from recognizing or

20  enforcing any judgment rendered by a foreign court if the foreign court did not have jurisdiction

21  to adjudicate the dispute as determined under German law.  (Dissars Decl. ¶¶ 37, 38, Ex. 38.)  As

22  demonstrated below, the Court lacks jurisdiction over Defendant and Defendant has no material

23  connection to Washington.  (*See infra* Sect. III.B.)  Accordingly, there is a significant likelihood

24  that a German court will refuse to enforce any U.S. judgment.  (Dissars Decl. ¶ 38.)

25                    **3.      The Public Interest Factors Weigh in Favor of Dismissal.**

26          Under *Atlantic Marine*, the only way for Plaintiffs to stay in this Court—in contravention

27  of the forum-selection clause—is to establish that public interest factors so clearly favor

MOTION TO DISMISS
No. 2:13-cv-02311-RSM

13

**LATHAM & WATKINS LLP**
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600

1   litigation in Washington that they constitute "extraordinary circumstances." *Atl. Marine*, 134 S.

2   Ct. at 575, 581.  The relevant public interest factors are:  (1) the local interest in the lawsuit,

3   (2) the court's familiarity with the governing law, (3) the burden on local courts and juries,

4   (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular

5   forum." *Tuazon*, 433 F.3d at 1181.  These factors—especially the Court's relative unfamiliarity

6   with governing German law—weigh substantially in favor of litigation in Germany over

7   Washington.  This certainly is not the "most unusual" case justifying litigation in Washington

8   over the parties' preselected forum in Germany.  *Atl. Marine*, 134 S. Ct. at 583.

9                   **a.      German Courts Are Better Suited to Apply German Law.**

10          The Distribution Agreement expressly requires the application of German law to this

11  contractual dispute between the parties.  (Haase Decl. ¶ 17, Ex. 2 § 13(a) ("German law shall be

12  applicable except for the conflicts of laws provisions and the provisions of the Private

13  International Law.").)  This provision is conclusive under applicable choice of law rules.

14          To determine which law applies, this Court will apply the choice of law rules of the

15  forum state.  *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 641 (9th Cir. 1988).

16  Washington law provides that courts should "generally enforce choice-of-law provisions."

17  *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1129 (W.D. Wash. 2010).  Specifically, Washington

18  courts "will enforce a choice of law provision unless *all three* of these conditions are met":

19  (1) "without the provision, Washington law would apply;" (2) "the chosen [jurisdiction's] law

20  violates a fundamental public policy of Washington;" and (3) "Washington's interest in the

21  determination of the issue materially outweighs the chosen [jurisdiction's] interest."  *Detwiler v.*

22  *U.S. Dist. Ct.*, 305 F. App'x 353, 355 (9th Cir. 2008) (quoting *McKee v. AT&T Corp.*, 191 P.3d

23  845, 851 (Wash. 2008)) (emphasis added).  *None* of these factors is satisfied in this case.

24          *First*, Washington law would not apply to this action even if there were not a German

25  choice-of-law clause.  In making this determination, courts consider "(1) the place of

26  contracting; (2) the place of contract negotiation; (3) the place of contract performance; (4) the

27  location of the subject matter of the contract; and (5) the domicile, residence, or place of

1    incorporation of the parties." *Detwiler*, 305 F. App'x at 355.  The first two factors weigh

2    entirely in favor of German law, as the Distribution Agreement was negotiated and executed in

3    Germany.  (Haase Decl. ¶¶ 18-19.)  The third and fourth factors also weigh in favor of German

4    law as Defendant fulfilled its obligations to transfer products to Plaintiff LSC under the

5    Distribution Agreement entirely in Germany.  (*Id.* ¶ 20, Ex. 2 § 3(j).)  The fifth factor is neutral.

6    In sum, not a single factor weighs in favor of applying Washington law over German law.

7         *Second*, there is no "fundamental public policy of Washington" that would be violated by

8    enforcing contractual terms agreed to by the parties.  *See Carideo*, 706 F. Supp. 2d at 1132.

9         *Third*, as stated above, Germany's interest in having its law applied substantially

10   outweighs any interest Washington may have.  In short, German law was preselected by the

11   parties at arms-length and memorialized in a contractual agreement negotiated, drafted, and

12   executed in Germany, on behalf of a German entity (Defendant) and German principals of a

13   Washington entity (Plaintiff LSC).  (Haase Decl. ¶¶ 3, 8, 13, 18, 21-22.)

14        Accordingly, the court deciding this case will have to apply German law to a German

15   language contract.  German courts are routinely regarded as better situated to decide such

16   disputes under German law.  *See Leetsch v. Freedman*, 260 F.3d 1100, 1103 (9th Cir. 2001)

17   ("The German court would be more competent than a United States court to hear the claim

18   because of its familiarity with the German language and the governing German law."); *see also*

19   *Vivendi S.A. v. T-Mobile USA, Inc.*, No. 06-1524, 2008 U.S. Dist. LEXIS 118529, at *41 (W.D.

20   Wash. June 5, 2008) (this Court "is not familiar with the laws of . . . Germany").  German courts

21   routinely interpret and apply German law in contract disputes like this one.  (Dissars Decl. ¶ 41.)

22        As explained by the Ninth Circuit, the application of German law "weighs especially

23   heavily" in favor of litigation in Germany:

24        The fourth factor weighs especially heavily in favor of the German courts. Not
          only is the district court unfamiliar with German law, were it to hear the case it
25        would be required to translate a great deal of that law from the German language,
          with all the inaccuracy and delay that such a project would necessarily entail.
26

27   *Leetsch*, 260 F.3d at 1105; *accord Stellia*, 2013 U.S. Dist. LEXIS 171632, at *13 (because

1    "German law will govern the contract claim . . . any interest that the citizens of Nevada do have

2    would be outweighed by this Court's lack of familiarity with German law."); *see also Loya v.*

3    *Starwood Hotels & Resorts*, No. 06-0815, 2007 U.S. Dist. LEXIS 49012, at *28-29 (W.D. Wash.

4    July 6, 2007) ("The need to apply foreign law strong[ly] favors dismissal based on *forum non*

5    *conveniens*."). This crucial factor is overwhelming, incontrovertible, and decisive.

**b.    Washington Has No Material Interest in This Action.**

7    Washington has no material interest in deciding this action over a German language

8    contract under German law entered into in Germany. This case involves a contractual dispute

9    between two private parties, and it does not affect the welfare of Washington residents or

10   consumers generally. Germany has a superior interest in ensuring the consistent application of

11   German law, respecting the parties' choice of forum, and holding parties to obligations entered

12   into entirely in Germany.

**c.    Washington's Juries and Courts Should Not Be Burdened.**

14   Based on the latest available federal court records, this Court had 2,955 total cases

15   pending as of June 30, 2013. (Request for Judicial Notice ("RJN"), Ex. 1 at 3 (U.S. Courts

16   Statistics).) The median time to trial in this district is 20.1 months. (*Id.*) In 2011 and 2012, the

17   last two years for which there is data available, the number of filings in this district increased by

18   12.4 and 5.9 percent, respectively. (RJN, Ex. 2 at 26; *id.*, Ex. 3 at 3.) Concurrently with this

19   increase in filings, the Court endured substantial cuts to funding and staffing. (*See* Hon. M.

20   Pechman, *Federal Judiciary Budget Cuts and Quandaries*, 34 F. Bar Ass'n Issue 2 at 5 (2002),

21   available at http://www.fba-wdwash.org/newsletters/FBAWinter12.pdf ("Over the past two

22   years, the total number of case filings in our district has grown more than 16.5 percent.

23   However, rather than adding staff to meet growing demand, the clerk's office and the probation

24   and pretrial services system absorbed a 10 percent budget cut . . . the district has reduced staff by

25   21 positions.").) Washington's courts should not be further burdened with a dispute over a

26   private contract that the parties agreed to adjudicate elsewhere. Likewise, the state's English-

27   speaking juries should not be burdened with deciding the application of German law to a German

MOTION TO DISMISS
No. 2:13-cv-02311-RSM

16

**LATHAM & WATKINS LLP**
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600

language contract.  *See Gering v. Fraunhofer-Gesellschaft e.V.*, No. 05-73458, 2009 U.S. Dist. LEXIS 81812, at *12 (E.D. Mich. Sept. 9, 2009) ("The fact that a jury . . . will be comprised of English-speaking persons (presumably similarly lacking knowledge of the German language) likewise strongly disfavors trying this case in [this district].").

### d.       German Courts Are Not Congested.

German courts are not congested and are expected to resolve this dispute in a timely manner.  (Dissars Decl. ¶ 26.)  The average time for resolving disputes through trial for the Regional Courts in the appellate district of the Higher Regional Court (*Oberlandesgericht*) in Celle, Germany, which includes the Regional Court in Hanover, Germany, is 13.6 months.  (*Id.* ¶ 27, Ex. 30.)  This is more than six months faster than the median time to trial in this Court. (RJN, Ex. 1 at 3 (median time to trial is 20.1 months).)  Because litigation in Germany will be relatively speedier, this factor favors dismissal.  *See Deirmenjian*, 2006 U.S. Dist. LEXIS 96772 at *56 ("it would take a German court more than a year to resolve this case, this still compares favorably with the this district's median time to trial of 20.5 months").

### e.       German Litigation Would Be More Cost Effective.

Finally, the cost and burden of resolving this contractual dispute under German law will be less in Germany than in Washington.  (Dissars Decl. ¶ 41.)  German courts simply have superior expertise in interpreting a German language contractual under German law.  (*See supra* Sect. III.A.3.a.)  Litigation in Germany will not require translators for the many relevant German witnesses or the translation of German documents, which form the majority of evidence likely to be relevant here.  (Haase Decl. ¶¶ 11, 31; Dissars Decl. ¶ 6.)  Litigation in Germany also would not materially prejudice Plaintiffs:  Plaintiff LSC's founders are German citizens, fluent in German, and travel regularly to Germany for business, and Plaintiffs have already participated in dispute resolution proceedings in Germany.  (Haase Decl. ¶¶ 13-15, 27; Dissars Decl. ¶¶ 8-9.)

Accordingly, this dispute over a German language contract under German law should be litigated in Germany, and Plaintiff's Complaint dismissed on *forum non conveniens* grounds.

MOTION TO DISMISS
NO. 2:13-cv-02311-RSM

17

**LATHAM & WATKINS LLP**
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600

1

**B.      The Court Should Dismiss This Case for Lack of Personal Jurisdiction.**

2      Plaintiffs' claims should also be dismissed because Defendant's sparse contacts with

3   Washington are insufficient to establish personal jurisdiction.  Under Federal Rule of Civil

4   Procedure 12(b)(2), Plaintiffs bear the burden of establishing personal jurisdiction based on more

5   than "the bare allegations of [the] complaint."  *Schwarzenegger v. Fred Martin Motor Co.*, 374

6   F.3d 797, 800 (9th Cir. 2004).  Personal jurisdiction is determined in diversity cases (such as

7   this) based on the law of the forum state.  *Id.*  Washington's long-arm statute is coextensive with

8   the U.S. Constitution, which allows the exercise of jurisdiction over a defendant only if it has

9   certain "minimum contacts with [the state] such that the maintenance of the suit does not offend

10   'traditional notions of fair play and substantial justice.'"  *Wash. Shoe Co. v. A-Z Sporting Goods*

11   *Inc.*, 704 F.3d 668, 672 (9th Cir. 2012).  Subject to the "minimal contacts" analysis, a court may

12   obtain either general or specific jurisdiction over a defendant.  *Id.*  Plaintiffs cannot establish

13   either basis for personal jurisdiction over Defendant, a German entity with no material

14   connection to Washington.  As a result, Plaintiff's Complaint must be dismissed with prejudice.[4]

15      **1.      Plaintiff Cannot Establish General Jurisdiction Over Defendant.**

16      Defendant is not subject to general jurisdiction in Washington.  For general jurisdiction to

17   attach, "the defendant must engage in 'continuous and systematic general business contacts' . . .

18   that 'approximate physical presence' in the forum state."  *Schwarzenegger*, 374 F.3d at 801.

19   Factors relevant to this analysis include "whether the defendant makes sales, solicits or engages

20   in business, serves the state's markets, designates an agent for service of process, holds a license,

21   has employees, or is incorporated there."  *Hirsch v. Blue Cross, Blue Shield*, 800 F.2d 1474,

22   1478 (9th Cir. 1986).  Here, Defendant does *not*:  (1) directly sell, solicit, or engage in business;

23   (2) have any agent for service; (3) hold any license; (4) have any employees; or (5) have any

24   incorporated status in Washington or anywhere in the United States.  (Haase Decl. ¶¶ 4-6;

25

26   [4]      Defendant additionally is entitled to seek attorneys' fees under Washington Revised Code § 4.28.185(5) given the absence of jurisdiction here.  *See* Wash. Rev. Code § 4.28.185(5); *McGinley v. Magone Marine Serv.*, No.

27   13-1678, 2013 U.S. Dist. LEXIS 169805, at *7 (W.D. Wash. Dec. 2, 2013) (granting attorneys' fees).

1   Dissars Decl. ¶¶ 42-44.)  The only material contact Defendant had with Washington was its

2   terminated Distribution Agreement with Plaintiff LSC.  This minimal contact is wholly

3   insufficient to "approximate physical presence" in the state to satisfy the severe requirements for

4   general jurisdiction.  *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1226 (9th Cir.

5   2011) ("engaging in commerce with residents of the forum state is not in and of itself the kind of

6   activity that approximates physical presence"); *Hirsch*, 800 F.2d at 1478.

7           **2.**      **Plaintiff Cannot Establish Specific Jurisdiction Over Defendant.**

8           Plaintiffs also cannot meet their burden to establish specific jurisdiction over Defendant.

9   Specific jurisdiction must be established for *each* claim, and requires *all* of the following

10  conditions:  (1) the defendant must have "purposefully avail[ed] himself of the privilege of

11  conducting activities in the forum"; (2) "the claim must be one which arises out of or relates to

12  the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with

13  fair play and substantial justice, *i.e.* it must be reasonable."  *Schwarzenegger*, 374 F.3d at 802.

14  Plaintiffs cannot demonstrate that Defendant purposely availed itself to Washington through the

15  Distribution Agreement, and the assertion of personal jurisdiction over Defendant based on the

16  Distribution Agreement would be manifestly unreasonable.

17          **a.**      **Defendant Did Not Purposefully Avail Itself to Washington.**

18          Plaintiffs fail to establish the first requirement for specific jurisdiction.  "A showing that

19  a defendant purposefully availed himself of the privilege of doing business in a forum state

20  typically consists of evidence of the defendant's actions in the forum, such as executing or

21  performing a contract there."  *Schwarzenegger*, 374 F.3d at 802.  In this case, the Distribution

22  Agreement between Plaintiff LSC and Defendant is the sole basis for Plaintiffs' assertion of

23  personal jurisdiction over Defendant in Washington.  (Compl. ¶¶ 16-17, 20-21, 23-26, 28-30, 32-

24  34, 36.)  It is well established, however, that a "contract alone does not automatically establish

25  the requisite minimum contacts necessary for the exercise of personal jurisdiction."  *Gray & Co.*

26  *v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990).  Instead, a court must carefully

27  consider in each case the particular "negotiations and contemplated future consequences, along

MOTION TO DISMISS
No. 2:13-cv-02311-RSM

19

LATHAM & WATKINS LLP
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600

1    with the terms of the contract and the parties' actual course of dealing."  *Id.*  The negotiations

2    and terms of the Distribution Agreement reveal no actions by Defendant directed at Washington.

3           *First*, the Distribution Agreement was not negotiated in Washington.  The Distribution

4    Agreement was instead negotiated, drafted, and executed wholly in Germany.  (Haase Decl.

5    ¶ 18.)  No negotiations took place in Washington nor did Defendant or its representatives ever

6    step foot in Washington during the process.  (*Id.*)  As part of these negotiations, the parties

7    expressly agreed that any dispute regarding the Distribution Agreement over its terms would be

8    settled through litigation in Germany, under German law (*id.* ¶ 17, Ex. 2 § 13(a)-(b)),

9    demonstrating that Defendant did not purposefully avail itself of the privileges of the forum.  *See*

10   *Exp. Global Metals, Inc. v. Memking Recycling Grp., LLC*, No. 13-747, 2013 U.S. Dist. LEXIS

11   154379, at *7 (D. Or. Sept. 26, 2013) (finding that "choice-of-law and/or forum selection clause

12   in an underlying contract may be instructive" in assessing purposeful availment).

13          *Second*, Defendant's obligations under the Distribution Agreement were limited to

14   activities in Germany, not Washington.  The Distribution Agreement was negotiated so that

15   Defendant would have no obligation to deliver or ship any product into the United States or

16   Canada.  *See Singletary v. B.R.X., Inc.*, 828 F.2d 1135, 1136 (5th Cir. 1987); *Growden v. Ed*

17   *Bowlin & Assocs., Inc.*, 733 F.2d 1149, 1151 (5th Cir. 1984) (no jurisdiction where plaintiff

18   came to defendant's forum, took possession of product, and delivered it to the forum state).  In

19   particular, the Distribution Agreement provides that Plaintiff LSC shall insure and be solely

20   responsible for the transportation of all goods "ex works" from Germany.  (Haase Decl. ¶ 17, Ex.

21   2 § 3(j).)  This provision means that Defendant's obligations ended when it placed its products at

22   the disposal of Plaintiff LSC at Defendant's premises in Germany and never included activities

23   in Washington or elsewhere in the United States.  (*Id.* ¶ 20.)

24          *Third*, the Distribution Agreement covered all of the United States and Canada, and did

25   not specifically direct any of Defendant's products to Washington.  *See Holland Am. Line, Inc. v.*

26   *Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) ("The placement of a product into the

27   stream of commerce [through a distribution agreement], without more, is not an act purposefully

MOTION TO DISMISS
No. 2:13-cv-02311-RSM

20

**LATHAM & WATKINS LLP**
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600

directed toward a forum state."); *Coe v. Philips Oral Healthcare, Inc.*, No. 13-518, 2014 U.S. Dist. LEXIS 19186, at *10 (W.D. Wash. Feb. 14, 2014).  There was no requirement that Plaintiff LSC sell in *Washington* at all.  (Haase Decl. ¶ 17, Ex. 2 § 1(d).)  Defendant had no control over the states in which Plaintiff LSC would choose to act.  Without further purposeful direction of its products into the Washington forum, Defendant has not done enough for jurisdiction to attach. *See J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2790 (2011) (in assessing "the authority of a New Jersey state court to exercise jurisdiction . . . it is petitioner's purposeful contacts with New Jersey, not with the United States, that alone are relevant"); *Monje v. Spin Master Inc.*, No. 09-1713, 2013 U.S. Dist. LEXIS 75330, at *19 (D. Ariz. May 29, 2013) ("A foreign entity that places its product into the stream of commerce and then passively observes its distribution—hoping, even expecting that the product might be distributed in the domestic market—has not done enough [for] personal jurisdiction.").

*Fourth*, Plaintiffs cannot base any claim of jurisdiction over Defendant by citing their own Washington-based activities.  The law is clear that Plaintiffs' activities are irrelevant to whether Defendant purposefully availed itself of the forum.  *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 816 (9th Cir. 1988); *Steelman Partners, LLP v. Sanum Invs. Ltd.*, No. 12-198, 2013 U.S. Dist. LEXIS 39436, at *10 (D. Nev. Mar. 21, 2013).

Plaintiffs have not met their burden to demonstrate that Defendant purposefully availed itself to the benefits and privileges of the Washington forum.  On the contrary, the negotiations, execution, and terms of the Distribution Agreement reflect that Defendant did *not* do so.

### b.     The Assertion of Jurisdiction Would Be Unreasonable.

Even if Defendant had purposefully availed itself of the benefits of doing business in Washington (and it did not), the Court cannot exercise jurisdiction over Defendant unless its contacts are such that the Defendant should "reasonably anticipate being haled into court in Washington."  *Wash. Shoe*, 704 F.3d at 679.  To determine whether the exercise of jurisdiction is reasonable, the Court considers seven factors:  "(1) the extent of the defendant's purposeful injection into the forum; (2) the defendant's burdens from litigating in the forum; (3) the extent

MOTION TO DISMISS
No. 2:13-cv-02311-RSM

21

**LATHAM & WATKINS LLP**
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600

1  of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in

2  adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the

3  importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the

4  existence of an alternative forum."  *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir.

5  2001).  These factors show that jurisdiction over Defendant would be manifestly unreasonable:

6       (1)  Defendant's interjection into Washington is minimal and limited solely to the

7  Distribution Agreement.  (*See supra* Sect. III.B.2.a.)

8       (2)  Litigation in Washington would be unduly burdensome for Defendant, a German

9  entity with no material connection to the United States.  (*See supra* Sect. III.A.2.a.)

10      (3)  The assertion of jurisdiction over Defendant, a Germany entity—on issues of

11  German law, in a German contract, drafted in German, and executed in Germany—would

12  conflict with the sovereignty of Germany.  *See Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1

13  F.3d 848, 852 (9th Cir. 1993) ("Where, as here, the defendant is from a foreign nation rather than

14  another state, the sovereignty barrier is high and undermines the reasonableness of personal

15  jurisdiction."); *Pac. Atl. Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1330 (9th Cir. 1985).

16      (4)  Washington has a minimal interest in litigation based on a German contract under

17  German law, which provides for litigation in Germany.  (*See supra* Sect. III.A.3.b.)

18      (5)  The most efficient resolution of this dispute under German law will be reached in

19  a German court.  (*See supra* Sect. III.A.3.e.)

20      (6)  Plaintiffs cannot be heard to complain about any inconvenience and inefficacy of

21  the German forum as it was the pre-selected forum for litigation under the Distribution

22  Agreement, and Plaintiffs already have engaged in dispute resolution proceedings in Germany

23  regarding the same claims.  (*See supra* Sect. III.A.2.a; *see also Mattel*, 354 F.3d at 868 (plaintiff

24  has minimal interest in forum since contracts were "in the German language, were negotiated

25  and executed in Germany, and identify a location in Germany as the place of jurisdiction").)

26      (7)  Germany provides an adequate—and, indeed, superior—alternative forum for this

27  litigation.  (*See supra* Sects. III.A.1, III.A.3.a.)

MOTION TO DISMISS
No. 2:13-cv-02311-RSM

22

**LATHAM & WATKINS LLP**
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600

C.      **Plaintiff Tang's Claim for Declaratory Relief Should Be Dismissed.**

Plaintiff Tang's sole claim for declaratory relief with respect to the Domain Name must also be dismissed.  Either his claim (1) is closely related to the Distribution Agreement and he is bound by its forum-selection clause (*see supra* Sect. III.A); or (2) the Court lacks personal jurisdiction over Defendant with respect to Tang's claims (*see supra* Sect. III.B.2).  Either way, Plaintiff Tang's claim cannot survive this motion.

1.      **Plaintiff Tang's Claim Are Subject to the Forum-Selection Clause.**

Although Plaintiff Tang is not a party to the Distribution Agreement, he is bound by the forum-selection clause contained therein because his claims are closely related to the Distribution Agreement between Plaintiff LSC and Defendant.  *See Holland*, 485 F.3d at 456 ("where the alleged conduct of the nonparties is closely related to the contractual relationship, 'a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses'"); *Nextrade, Inc. v. Hyosung, Inc.*, 122 F. App'x 892, 894 (9th Cir. 2005); *Graham Tech. Solutions v. Thinking Pictures*, 949 F. Supp. 1427, 1433 (N.D. Cal. 1997).

Plaintiff Tang's sole claim against Defendant is for declaratory relief.  (Compl. ¶ 37.) Specifically, Tang states that he has a "continuing right to use the [Domain Name] and that such use does not violate any trade name or trademark rights held by Defendant."  (*Id.*)  This claim is based solely on the Distribution Agreement.  (*Id.* ¶ 17 ("Because the Distribution Agreement . . . has not been validly terminated by Laverana, Tang and LSC's use of the word 'lavera' in an internet address does not violate Defendant's trademark rights[.]").)  Indeed, the only relief Tang seeks is a declaration judgment that the Distribution Agreement is still valid and that "Tang and LSC have a valid and continuing right to use the [Domain Name] *according to the terms and conditions of the Distribution Agreement*."  (*Id.* ¶ 38(d).)  Accordingly, Plaintiff Tang, like LSC, is bound by the terms of the Distribution Agreement, and his claims should similarly be dismissed for *forum non conveniens*.  (*See supra* Sect. III.A.)[5]

---

[5]      Plaintiff Tang is sufficiently related to the Distribution Agreement merely by virtue of his relationship with LSC.  *See Comerica Bank v. Whitehall Specialties, Inc.*, 352 F. Supp. 2d 1077, 1082 n.6 (C.D. Cal. 2004) (stating

1

**2.      The Court Lacks Jurisdiction Over Claims Unrelated to the Contract.**

2       If Plaintiff Tang argues that his claim against Defendant somehow does *not* relate to the

3  Distribution Agreement, his claim must be dismissed for lack of personal jurisdiction.  As

4  explained above (*supra* Sect. III.B), the specific jurisdiction analysis must be conducted claim-

5  by-claim.  *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir.

6  2004); *Glud & Marstrand A/S v. Microsoft Corp.*, No. 05-1563, 2006 U.S. Dist. LEXIS 62363, at

7  *8 (W.D. Wash. Aug. 15, 2006).  Because any assertion of personal jurisdiction over Defendant

8  must be based on the Distribution Agreement (*supra* Sect. III.C.1), Tang's claim must either

9  arise from that agreement or the Court lacks jurisdiction over his claim.

10  **IV.     CONCLUSION**

11       Defendant respectfully requests that this Court dismiss Plaintiffs' claims with prejudice

12  based on the doctrine of *forum non conveniens* and for lack of personal jurisdiction.

13

14  Dated:  April 8, 2014                                    Respectfully submitted,

15                                                           By   *s/ Molly A. Terwilliger*

16  Of Counsel:                                                   Molly A. Terwilliger

17  LATHAM & WATKINS LLP                                     SUMMIT LAW GROUP
       Melanie M. Blunschi (*pro hac vice*)                     Molly A. Terwilliger (Wash. Bar No. 28449)
18     *melanie.blunschi@lw.com*                                 *mollyt@summitlaw.com*
       James H. Moon (*pro hac vice*)                        315 5th Avenue South, Suite 1000
19     *james.moon@lw.com*                                    Seattle, Washington 98104
20  505 Montgomery St. Suite 2000                            Telephone:  (206) 676-7000
    San Francisco, California 94111-6538                     Facsimile:  (206) 676-7001
21  Telephone:  (415) 391-0600
    Facsimile:  (415) 395-8095                               *Attorneys for Defendant Laverana GmbH &*
22                                                           *Co., KG, a German limited partnership*

23

24

25

26

27  that a corporation's contract, including forum non conveniens clause, applies to corporate officers).  Mr. Tang is
    married to Plaintiff LSC's chairman, Ms. Jacob, and is a current officer of LSC.  (Haase Decl. ¶ 16.)

1

<u>**CERTIFICATE OF SERVICE**</u>

2

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the

3

Court using the CM/ECF system, which will send notification of such filing to the following:

4

SEANN COLGAN

5

GUY MICHELSON

CORR CRONIN MICHELSON

6

BAUMGARDNER &PREECE LLP

scolgan@corrcronin.com

7

gmichelson@corrcronin.com

8

DATED this 8th day of April, 2014.

9

*s/ Kathy Wheat*

10

Kathy Wheat, Legal Assistant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

LATHAM & WATKINS LLP
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600