**Honorable Ricardo S. Martinez**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| LAVERA SKIN CARE NORTH AMERICA, INC., a Washington corporation; and VICTOR TANG, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>LAVERANA GMBH & CO. KG, a German limited partnership,<br><br>Defendant. | No. 2:13-cv-02311-RSM<br><br>**DECLARATION OF DR. BJÖRN-AXEL DISSARS IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |

LATHAM & WATKINS LLP
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600

**DECLARATION OF DR. BJÖRN-AXEL DISSARS**

I, Dr. Björn-Axel Dissars, declare as follows:

1. The statements made herein are based on my personal knowledge, and if called upon to do so, I could and would testify competently thereto under oath. I have reviewed the Complaint in the above-captioned matter ("Complaint") and am familiar with the allegations contained therein. I make this declaration in support of Laverana's Motion to Dismiss Plaintiffs' Complaint for *Forum Non Conveniens* and Lack of Personal Jurisdiction.

**A. My Background And Qualifications**

2. I am a German citizen, and I reside in Hamburg, Germany. In 1996, I earned my *doctor juris* degree from the University of Hamburg. While at the University of Hamburg, I passed the First German State Examination in 1993. I passed the Second German State Examination in 1996. I spent my legal internship/traineeship (*Referendarzeit*) in Hamburg, Berlin, Toronto, and London.

3. I was admitted to practice law in Germany in 1997. I am a member in good standing of the Hamburg, Germany bar (*Rechtsanwaltskammer*), licensed to practice before all German courts. Since 2004, I have been a partner in the law firm of Latham & Watkins LLP ("Latham"), and I practice in the firm's Hamburg, Germany office. I am not admitted to practice law in any state of the US.

4. I have about 17 years of experience representing German and international clients also in complex litigation and arbitration matters. Based on my education and experience, I am very familiar with Germany's legal system, including the procedures for resolving disputes and remedies available to litigants.

5. Since September 2011, I have represented Defendant Laverana GmbH & Co. KG ("Laverana") in matters related to their business in Germany and otherwise arising under German law. At the same time, I began advising Laverana regarding the distribution agreements described in the Complaint (the "Distribution Agreements").

LATHAM & WATKINS LLP
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600

**B. Background Regarding the Present Dispute**

6. Plaintiff Lavera Skin Care North America, Inc. ("LSC") and Laverana have been engaged in discussions regarding LSC's alleged claims and LSC's failure to perform under the Distribution Agreements since 2010 or 2011. The parties engaged in extensive negotiations to resolve disagreements regarding their respective rights and obligations under the Distribution Agreements. Correspondence regarding the parties' disagreements was predominantly in the German language. Exhibit 1 to this declaration contains true and correct copies of sample correspondence, in each case without appendices, including:

(a) e-mail letter from Laverana to LSC dated October 6, 2011;

(b) letter from Latham's Hamburg, German office, to LSC's former counsel Beiten Burkhardt Rechtsanwaltsgesellschaft mbH ("Beiten Burkhardt") dated November 1, 2011;

(c) letter from Latham's Hamburg, German office, to Beiten Burkhardt dated November 8, 2011;

(d) letter from Beiten Burkhardt to Latham's Hamburg office dated November 14, 2011;

(e) letter from Beiten Burkhardt to Latham's Hamburg office dated November 24, 2011;

(f) letter from LSC to Laverana dated January 12, 2012;

(g) telefax from Latham's Hamburg, German office, to Beiten Burkhardt dated January 12, 2012;

(h) letter from Beiten Burkhardt to Latham's Hamburg office, dated January 13, 2012;

(i) letter from Latham's Hamburg office, to Beiten Burkhardt dated March 19, 2012;

(j) letter from LSC to Laverana dated March 11, 2013;

(k) letter from Stenger LLP to Laverana dated April 11, 2013;

(l) letter from Latham's Hamburg office to Stenger LLP dated April 30, 2013,

(m) letter from Stenger LLP to Latham's Hamburg office, dated May 29, 2013, and

(n) telefax from Latham's Hamburg office, to Stenger LLP dated June 21, 2013.

7. On March 27, 2013, Laverana provided notice to LSC that it was terminating the Distribution Agreements based on LSC's performance failures. As a matter of precaution, and in light of LSC's assertion that such termination was improper, Laverana (either itself or on its behalf by Latham's Hamburg office) sent additional notices of termination, dated April 30, 2013, June 21, 2013, and January 17, 2014, based on the occurrence of further grounds to terminate the Distribution Agreements for good cause (*aus wichtigem Grund*).

8. Prior to the termination notice dated March 27, 2013, as reflected in Stenger LLP's letters dated April 11, 2013 and May 29, 2013 and LSC's letter dated March 11, 2013, LSC and Laverana participated in mediation and settlement negotiations regarding claims under the Distribution Agreements. The mediator was Dr. Andreas Hacke, a German citizen and German-qualified attorney of the German law firm Zwanzig Hacke Meilke & Partner. The mediation proceeding was terminated by LSC by its letter of March 11, 2013.

9. Plaintiff was represented by German counsel in connection with the discussions regarding the Distribution Agreements described above. When I became involved in the matter, Plaintiff was represented by Mr. Matthias Stecher of the German law firm Beiten Burkardt based in Munich. Mr. Stecher was later replaced by Jana-Natascha Garisch, a Hamburg-based attorney with the German law firm of Alpers & Stenger LLP, which subsequently became Stenger LLP. I am informed and believe that neither Alpers & Stenger LLP nor Stenger LLP nor Beiten Burkhardt has any offices in the United States.

10. Following termination of the mediation, Ms. Garisch of Stenger LLP sent me a letter on behalf of Plaintiff indicating that Plaintiff may soon file a lawsuit and asking whether I would accept service of their lawsuit on behalf of Laverana. The letter was written in German. A true and correct copy of the letter from Ms. Garisch of Stenger LLP to me, dated June 28, 2013, and an English translation of the letter, are attached hereto as Exhibits 2 and 3, respectively.

11. On July 16, 2013, I responded to Ms. Garisch's letter dated June 28, 2013 to indicate that I was authorized by Laverana to accept service of LSC's complaint. Like Ms. Garisch's letter, my response was written in German. A true and correct copy of the July 16, 2013 letter from me to Stenger LLP, and an English translation, are attached as Exhibits 4 and 5, respectively.

12. As all proceedings up until that point had occurred in Germany, the Distribution Agreements designates Hanover, Germany as the place of jurisdiction, LSC's counsel only had offices in Germany, and my communications with Ms. Garisch regarding her firm's handling of the lawsuit ("*our lawsuit*"), it was my understanding that any such complaint would be filed in Germany.

13. On January 8, 2014, Plaintiffs' attorneys in the United States, Corr Cronin Michelson Baumgardner & Preece LLP ("Corr Cronin"), sent me a letter enclosing a copy of the Complaint in English and German, and a request for waiver of the service of summons. The letter referenced my July 16, 2013, letter to Ms. Garisch, which was sent to the German law firm Stenger LLP, not to Corr Cronin. Attached as Exhibit 6 is a true and correct copy of the letter from Seann Colgan of Corr Cronin to me, dated January 8, 2014 (without appendices).

14. On January 21, 2014, I responded to Mr. Colgan's letter explaining that I was only authorized to accept service of a German lawsuit. I informed Mr. Colgan that I would forward the Complaint to Laverana so that Laverana could consider Plaintiffs' request for waiver of service. A true and correct copy of my letter to Mr. Colgan, dated January 21, 2014, and an English translation of the letter, are attached hereto as Exhibits 7 and 8, respectively.

15. On March 26, 2014, LSC officer Carrie Rice and Ms. Jacob sent a letter in German in response to Laverana's March 27, 2013 termination letter stating that, conditional upon the termination being acknowledged by court, LSC raises an agent compensation claim (*Handelsvertreterausgleichsanspruch*) regarding the Distribution Agreement. This is a claim that may exist under German law in cases where certain types of distribution agreements are validly terminated, unless in particular such termination was for good cause (*aus wichtigem Grund*) negligently caused by the agent. A true and correct copy of the March 26, 2014 letter from LSC to Laverana, and an English translation, are attached as Exhibits 9 and 10, respectively.

**C. Germany Is An Adequate Alternative Forum For This Litigation**

16. Laverana is a German limited partnership with its principal place of business in Germany, with its registered seat in Wennigsen, Germany. As a German limited partnership, Laverana is subject to service of process in Germany and to the jurisdiction of the judiciary of Germany.

17. Plaintiffs' alleged claims pursuant to the Complaint are not time barred in Germany. Under Section 195 of the German Civil Code (Civil Code (*Bürgerliches Gesetzbuch*) ("BGB"), the standard limitation period to bring a contract claim in Germany is three years. Under Section 199 BGB, the limitation period commences at the end of the year in which the claim arose and in which the potential plaintiff obtains knowledge of the circumstances giving rise to the claim (or has not obtained such knowledge gross negligently). Accordingly, the statute of limitations will not bar Plaintiffs' ability to file suit in Germany before the end of 2016 for the purportedly wrongful termination of the Distribution Agreements. In addition, according to Section 203 BGB the limitation period is suspended during the course of negotiations. A true and correct copy of Sections 195, 199 and 203 of the BGB, and an English translation of those provisions, are attached hereto as Exhibits 11 and 12, respectively.

18. In the Complaint, Plaintiffs allege causes of action for (1) breach of contract, (2) breach of covenants of good faith and fair dealing, (3) breach of fiduciary duty, (4) breach of

warranty, and (5) declaratory relief. All of Plaintiffs' causes of action are based on the Distribution Agreements. The Distribution Agreements expressly provide that they are governed by German law, stating in the English translation: "German law shall be applicable except for the conflict of laws provisions and the provisions of the Private International Law."

19. Subject to the underlying merits of Plaintiffs' case, German law provides a remedy for claims brought on contractual grounds, including for wrongful termination of a contract and breach of contract. For example, Section 280 of the BGB provides for damages for breach of contractual duty. Additionally, Section 242 of the BGB provides a general requirement to perform contractual duties in good faith. A true and correct copy of Sections 280 and 242 of the BGB, and an English translation of those provisions, are attached hereto as Exhibits 13 and 14, respectively.

20. German law permits plaintiffs to obtain money damages, declaratory or injunctive relief, and any other relief applied for and which a court may deem appropriate in accordance with the applicable laws. If a contract is wrongfully terminated, the contractual agreement remains valid and binding. In addition, an attempted wrongful termination may constitute a breach of contractual duty and, as a result, the wronged party may be allowed to recover damages under Section 280 BGB.

21. Germany has a well-established legal system based on civil law. Germany's laws are generally codified rather than based on judicial precedents. German civil courts follow the 1949 Basic Law for the Federal Republic of Germany (the German Constitution) (*Grundgesetz*) ("GG"), the German Courts Constitution Act (*Gerichtsverfassungsgesetz*) ("GVG"), and the German Code of Civil Procedure (*Zivilprozessordung*) ("ZPO"), as well as other applicable German procedural law.

22. The German Constitution guarantees to both domestic and foreign litigants the independence of the judiciary (Article 97 GG, Section 1 GVG), the right of all parties to be heard (Article 103 GG), and the right to equal treatment under the law (Article 3 GG). This includes the right to an independent, impartial, and fair decision in accordance with the law, and

the right to a fair trial. German courts are obliged to and do generally provide written opinions explaining the legal and factual bases for their decisions with reference to the governing provisions of the German civil law (Section 313 ZPO). A true and correct copy of Articles 97, 103, and 3 of the GG, and an English translation of those provisions, are included in Exhibits 15 and 16, respectively, which are attached hereto. A true and correct copy of Section 1 of the GVG, and an English translation of that provision, are included in Exhibits 17 and 18, respectively, which are attached hereto. A true and correct copy of Section 313 of the ZPO, and an English translation of that provision, are attached hereto as Exhibits 19 and 20, respectively.

23. German courts are available at the local, regional, appellate, and federal levels (Section 12 GVG). The jurisdiction of a court is determined on the basis of subject matter, residence or the registered seat of the parties, and the amount in dispute. If Plaintiffs were to bring a contractual claim in Germany alleging damages of €5,000 or higher (which is equivalent to approximately $6900), the Regional Court (*Landgericht*) in Hanover, Germany, would have jurisdiction pursuant to Sections 13, 23(1), 71(1) GVG and Section 17 ZPO. Under these provisions, the Regional Court of the district in which a juridical person is registered has general jurisdiction for all lawsuits brought against a juridical person in civil matters with a value in dispute in excess of €5,000. Laverana is registered in Wennigsen, Germany which is in the district of the Regional Court Hanover. A true and correct copy of Sections 12, 13, 23(1), and 71(1) of the GVG, and an English translation of these provisions, are attached hereto as Exhibits 21 and 22, respectively. A true and correct copy of Section 17 of the ZPO, and an English translation of that provision, are attached hereto as Exhibits 23 and 24, respectively.

24. Moreover, Plaintiff and Laverana have agreed in the Distribution Agreements in accordance with Section 38 ZPO that (in the English translation) "[t]he place of jurisdiction shall be Hanover, Germany." Under this provision, merchants and corporations may agree on the jurisdiction of a court, even if it would otherwise not have jurisdiction.

25. German law provides extensive procedural safeguards with developed laws and rules of civil procedure, evidence, and due process. The Germany legal system shifts in certain

circumstances the burden of demonstration onto the party who has access to relevant information, potentially reducing the burden on plaintiffs (so-called secondary burden of demonstration (*sekundäre Darlegungslast*)). German courts have the authority to order disclosure of evidence in the possession of the other party or a third party (Sections 142, 422 ZPO). A true and correct copy of Sections 142 and 422 of the ZPO, and an English translation for those provisions, are attached hereto as Exhibits 25 and 26, respectively.

26. German courts regularly and efficiently adjudicate disputes regarding German contracts governed under German law. German courts are not congested with matters that would unduly delay a resolution of this dispute. In the appellate district for the Regional Court Hanover, *i.e.* the district of the Higher Regional Court in Celle, there were approximately 11,000 pending cases at the beginning of 2012, approximately 14,000 new cases, and approximately 14,500 cases terminated (completed) (see German Federal Statistical Office, 2012 annual statistic of civil courts (*Statistik der Zivilgerichte*) p. 40). A true and correct copy of the relevant part of the relevant page of the German Federal Statistical Office, 2012 annual statistic of civil courts (*Statistik der Zivilgerichte*), and an English translation of the parts relevant here and for the Higher Regional Court in Celle, are attached hereto as Exhibits 27 and 28, respectively.

27. Although the time to resolve a lawsuit varies based on the nature and complexity of the claims, I am informed and believe that the time from initiation of a lawsuit before a Regional Court until a judgment is rendered by the Regional Court averaged 8.9 months in 2012 for the Regional Courts in the appellate district of the Higher Regional Court (*Oberlandesgericht*) Celle, which includes the Regional Court Hanover (see German Federal Statistical Office, 2012 annual statistic of civil courts (*Statistik der Zivilgerichte*) p. 52). A true and correct copy of the relevant part of the relevant pages of the German Federal Statistical Office, 2012 annual statistic of civil courts (*Statistik der Zivilgerichte*), and an English translation of the parts relevant here and for the Higher Regional Court in Celle, are attached hereto as Exhibits 29 and 30, respectively.



LATHAM & WATKINS LLP
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600

**D. Germany Is Better Suited To Handle Discovery Regarding The Claims**

28. All Laverana-affiliated witnesses and all of Laverana's documents are located in Germany. I am informed and believe that Laverana does not have any employees or officers in the United States, and Laverana does not maintain any documents or records in the United States. The only persons referenced in the Complaint that reside in the United States are Plaintiffs.

29. Discovery of documents and testimony from German-resident companies and individuals is likely necessary to adjudicate the issues raised on the Complaint, including testimony from non-parties located in Germany over whom Laverana has no control. For example, I am informed and believe that non-party Karen Rinne was the Laverana employee who handled the relationship between Laverana and Plaintiff for a certain period and she is likely to be an important witness regarding Plaintiffs' claims. Ms. Rinne, however, does not work for Laverana any longer, although she still lives in Germany.

30. If this matter were to proceed in the United States, Germany would not permit discovery of documents from non-party German residents. Germany has made use of the exception provided for in Article 23 of the Hague Convention on the Taking of Evidence Abroad ("Hague Convention") and objected to the fullest extent possible to assisting common law courts, including the United States courts, in any request for pre-trial discovery. Pursuant to Section 14(1) of the German law on the implementation of the Hague Convention on the Taking of Evidence Abroad "letters rogatory regarding proceedings under Article 23 of the [Hague] Convention will not be handled." A true and correct copy of Section 14(1) of the German law on the implementation of the Hague Convention on the Taking of Evidence Abroad, and an English translation, are attached hereto as Exhibits 31 and 32, respectively.

31. In contrast, German law permits German courts to order production of documents from parties and non-parties in German proceedings pursuant to Sections 142 and 422 of the ZPO. A true and correct copy of Sections 142 and 422 of the ZPO, and an English

LATHAM & WATKINS LLP
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600

translation of those provisions are attached (see above Exhibits 25 and 26 attached hereto, respectively).

32. German witnesses could not be compelled to testify at trial in the United States. While it may be possible to obtaining deposition testimony from witnesses located in Germany, doing so would be extremely burdensome. Germany objected to the taking of evidence through diplomatic or consular personnel pursuant to Article 16 of the Hague Convention and agreed with the United States by separate exchange of Note Verbales to allow the taking of evidence by United States diplomatic or consular officers in relation to German nationals in Germany only on a voluntary basis. To obtain pre-trial testimony in a proceeding in the United States, a party may otherwise proceed under Article 17 of the Hague Convention, which requires that the request for testimony in front of any other appointed agent be approved by the appropriate German Central Authority. If the Central Authority allowed the request, it may issue restrictions regarding the time and place of the evidence taking and other practical issues, as it deems fit. In addition, the Local Court (*Amtsgericht*) in which district the testimony is to be taken has a right to supervise the preparation of the examination as well as the actual examination (Section 12 of the German Act on the implementation of the Hague Convention), and the examination may also be attended by a representative of the Central Authority. The examination would take place in front of a properly authorized agent of the Unites States court. A true and correct copy of Section 12 of the German Act on the implementation of the Hague Convention, and an English translation, are attached hereto as Exhibits 33 and 34, respectively.

33. In contrast, if this litigation takes place in Germany, a party could compel the presence of a witness to testify at a trial in Germany by simply naming the witness as evidence for their factual allegations in their written submissions. German courts would then summon any witness that resides within Germany, including for example, former employees or agents of Laverana, to appear and testify in court. Pursuant to Section 380 ZPO German courts have the power to sanction a witness who refuses to appear in court with monetary fines and imprisonment and may instruct the Sheriff's office (*Gerichtsvollzieher*) to arrest a witness in

order to force their appearance in court. Witnesses are also under an obligation to testify and to testify under oath and may be sanctioned the same way and imprisoned until they testify, if they refuse to do so (Section 390 ZPO). A true and correct copy of Sections 380 and 390 of the ZPO, and an English translation of those provisions, are attached hereto as Exhibits 35 and 36, respectively.

34. Laverana's costs of litigating the matter in the United States will be substantially greater than if the litigation was in Germany, where Laverana and its principals reside and do business.

**E. A Judgment in This Action May Not Be Enforceable In Germany**

35. I am informed and believe that Laverana has no assets, bank account, or property in the United States in which any monetary judgment obtained in the United States could be enforced.

36. Although Germany has bilateral treaties with many other countries that allow for streamlined recognition of judgments in Germany, no such agreement exists between Germany and the United States. As a result, a judgment collected in the United States is not directly enforceable in Germany.

37. To be enforceable, the foreign judgment must first be "recognized" in Germany pursuant to Sections 722 and 723 ZPO in a separate judgment of a German court. Such judgment may only be issued after the foreign judgment is binding and final and cannot be appealed anymore abroad. In addition, the German court will verify that none of the conditions set out in Section 328 ZPO exists, which prevent recognizing the judgment in Germany. The recognition of a foreign judgment is *inter alia* prohibited by Section 328(1) no. 1 ZPO, if US courts do not have jurisdiction under German law or by Section 328(1) no. 5 ZPO if a German judgment would not be equally enforceable in the United States according to the principle of reciprocity. A true and correct copy of Sections 722, 723 and 328 of the ZPO, and an English translation of those provisions, are attached hereto as Exhibits 37 and 38, respectively.

38. As a result, a judgment of this court may not be "recognizable" and enforceable at all in Germany if a German court later finds that this court did not have jurisdiction under German law. This may be the case here: the provision of the contract selecting Hanover, Germany may be read to exclude the jurisdiction of the United States courts. Even if the German courts could "recognize" the judgment, thus further petitioning is required in Germany to enforce the judgment or reach a German party's assets.

39. A judgment by a German court would be readily enforceable against Laverana in Germany. If Plaintiffs are able to obtain a favorable judgment against Laverana, enforcement of the German judgment is a relatively simple process. Plaintiffs would merely have to apply to the court that the clerk issues a certified copy of the judgment and may then instruct the Sheriff's office (*Gerichtsvollzieher*) serve the judgment and to seize tangible assets or the court to seize monetary claims, *i.e.*, bank accounts or claims against third parties.

**F. Germany Has A Demonstrated Interest In This Dispute**

40. I am informed and believe that the Distribution Agreements that are the subject of this lawsuit were negotiated and executed in Germany and signed by German citizens. The Distribution Agreements provides (in the English translation) that "German law shall be applicable except for the conflict of laws provision and the provisions of the Private International Law." Although the Distribution Agreements were translated into English, the Distribution Agreements expressly provide that only the German-language versions are binding. The Distribution Agreements further provide (in the English translation) that the "place of jurisdiction shall be Hanover, Germany" for any litigation related to the Distribution Agreements.

41. German courts, including those in Hanover, routinely decide cases based on German contracts and decide issues regarding contractual formation, validity, termination, damages, and other relief. German courts, including those in Hanover, utilize the German language and have an expertise in German law.

**G. Defendant Does Not Have Any Significant Contacts With This Forum**

42. I am informed and believe that Laverana has no agent for service of process in Washington or anywhere else in the United States.

43. I am informed and believe that Laverana is not registered to do business in Washington or anywhere else in the United States, nor does it hold any license to conduct business in Washington or anywhere in the United States.

44. I am informed and believe that Laverana does not have any of the following in Washington or anywhere in the United States: (i) an office; (ii) a mailing address; (iii) a telephone number; (iv) bank accounts; (v) employees; or (vi) officers or directors.

45. I am informed and believe that Laverana has never availed itself of the jurisdiction of any court in Washington or anywhere else in the United States, and that Laverana has never been found by any court to be subject to the jurisdiction of a Washington court or any federal or state court in the United States. I am informed and believe that Laverana has not sued any individual or entity in a Washington court or the federal or state courts of the United States.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on April 5, 2014, in Hamburg, Germany.

Björn-Axel Dissars

LATHAM & WATKINS LLP
505 MONTGOMERY ST. STE. 2000
SAN FRANCISCO, CA 94111
(415) 391-0600



TRANSPERFECT

City of New York, State of New York, County of New York

I, Artem Furman, hereby certify that Exhibits 3, 5, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 36, and 38 attached hereto are, to the best of my knowledge and belief, true and accurate translations of Exhibits 2, 4, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, and 37 to the Declaration of Dr. Björn-Axel Dissars in Support of Defendant's Motion to Dismiss from German into English.

Artem Furman

Sworn to before me this

7th day of April 2014

Signature, Notary Public

LEAH RAE TALLMAN
Notary Public - State of New York
No. 01TA6295072
Qualified in New York County
Commission Expires Dec 30, 2017

Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS
THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 80 CITIES WORLDWIDE
TPT 077 rev. 1 20060612

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

SEANN COLGAN
GUY MICHELSON
CORR CRONIN MICHELSON
BAUMGARDNER &PREECE LLP
scolgan@corrcronin.com
gmichelson@corrcronin.com

DATED this 8th day of April, 2014.

                                         s/ Kathy Wheat
                                         Kathy Wheat, Legal Assistant