HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LAVERA SKIN CARE NORTH AMERICA,
INC., a Washington corporation; VICTOR
TANG, an individual,

                    Plaintiffs,

    v.

LAVERANA GMBH & CO. KG, a German
limited partnership,

                    Defendant.

No. 2:13-cv-02311-RSM

**DECLARATION OF ULRIKE JACOB IN
SUPPORT OF PLAINTIFF'S
OPPOSITION TO MOTION TO DISMISS**

       1.     I am the owner of Lavera Skin Care North America, Inc.  I am over eighteen years of age, am competent to testify and submit this declaration based upon personal knowledge.

       2.     I first met Thomas Haase, the owner of Laverana GmbH & Co., in 1998. Laverana manufactures natural and organic cosmetics and skin care products.  At that time, it only sold its products in Germany and German speaking countries.  I believed there was a market in the United States and Canada.  I had a degree in chemistry and was a long-time Lavera user.  I knew that I could be the perfect spokesperson for the Lavera line promoting and educating customers in North America about good ingredients and natural cosmetics.  In 1998, I suggested to Mr. Haase that my company, Ars Vivendi, become the exclusive importer and representative for Laverana in the U.S. and Canada.

DECLARATION OF ULRIKE JACOB – 1

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

3.     My husband at that time was Andreas Dewor.  Andreas was also an owner of Ars Vivendi.  We had discussions with Mr. Haase and Mr. Werner Oelschlaeger, the Sales Manager about becoming Laverana's representative.  In 1999, we executed a distribution agreement.  The territory for the agreement was California, Oregon, Washington, New York, and British Columbia.  **Exhibit A**.  Mr. Haase did not want to make a contract with a foreign company.  So we agreed that Andreas would be the party to the contract instead of Ars Vivendi.

4.     Ars Vivendi was first a British Columbia corporation and then a California corporation.  Its only employees in 1999 were me and Andreas.  We split up the work.  Andreas handled administration, logistics and imports, including ordering from Laverana.  I was the face of the business in the U.S. and Canada, creating client relationships with retail stores.

5.     At first, Laverana shipped goods to Vancouver, British Columbia where we did test marketing for the line.  Laverana had trouble packaging its goods properly for overseas shipment, and for a period of time Andreas' brother Stefan Dewor took delivery of goods from Laverana in Germany.  Once Laverana improved its packaging process, it resumed shipping direct to the US.  In 2001 or 2002, it started shipping to Ars Vivendi's location in San Diego, California and also to several tradeshows direct.  In 2006, it started shipping to Kirkland, Washington, after Lavera Skin Care was formed.  Laverana shipped goods on average two times per month direct to Washington via Airfreight and Oceanfreight.

6.     Not all products were delivered by Laverana "ex works."  In 2009 and 2010, Laverana made shipments using a "documents against payment" method, which meant that the goods were not released until they reached the Canadian or U.S. border.  Sample correspondence and delivery notes using this method are attached as **Exhibit B**.  Also, even as to the "ex works" delivered goods, Laverana packaged its goods and placed them into boxes and containers and had them shipped to us in the U.S. and Canada.  About half the time, Laverana would communicate with the shipping companies and arrange for shipments to us and half the time we made the contact. Due to the time difference between Germany and the US, pick up of goods at

DECLARATION OF ULRIKE JACOB – 2

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

their facility was usually initiated by Laverana and then shipping documents were sent to us via Fax or email. We use Fedex, UPS, Expeditors and CH Robinson Freight for shipments to the US and they have offices and representatives in Germany. Additional shipping documents are attached as **Exhibit C**.

7.       Andreas and I divorced in 2004. Lavera Skin Care ("LSC") was formed as a Washington corporation in 2006, and I have been a resident of Washington since 2006. Today, I am the sole owner of LSC.

8.       Selling Laverana goods in the U.S. and Canada was the only business of LSC. Between 1999 and 2012, we invested approximately $4 million for marketing and advertising of Laverana products. In 2008, we entered the national market, and by 2010 we had Laverana displays in national chains, 3,000-4,000 stores in all, and online at Drugstore.com. In 2010, LSC had nearly $5 million in sales. Also in 2010, we opened a new, 9,000-square-foot facility in Kirkland, Washington. LSC was employing 20 people at that time – sales representatives, marketing manager, makeup artists, graphics designer, web marketer, accountant, warehouse staff, and customer service staff. Business had grown rapidly, natural and organic products were becoming more mainstream, and we were expecting continued growth in the next few years of 25-30% annually.

9.       In November 2009, I had a conversation with our export manager at Laverana, Maia Francke. Ms. Francke had always been very helpful, and we had a good working relationship. Ms. Francke told me that Laverana had hired a consultant who recommended that Laverana open a direct international affiliate in the United States, instead of continuing to distribute products through LSC. Ms. Francke said that she was uncomfortable with the situation and that she did not know about her future at the company. Soon after, in January 2010, Ms. Francke left Laverana.

10.      In early 2010, we started having many problems with Laverana. The problems started with the Trend line of cosmetics, which was our most successful and widely distributed

DECLARATION OF ULRIKE JACOB – 3

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

product (about 50 % of our sales).  Laverana told us that they were re-launching the Trend line, however the re-launch never happened.  I discussed this matter many times with Laverana in 2010 and 2011, including making trips to Germany to meet with Mr. Haase or Sonia Czech or Klara Ahlers, and each time I was told that a re-launch was coming soon.  In the meantime, Laverana stopped producing the existing line of Trend products.  As a result, we could no longer obtain enough products to keep our displays stocked in Target and other stores. Color cosmetics products are commonly sold in displays and incomplete displays on the shelf are not accepted by the retailers for any period of time. Laverana's failure to provide products caused LSC to lose almost all the color cosmetics business we had worked to establish for years and damaged my reputation as a business owner long-term.

11.     It was not only the Trend line of products that was a problem.  Soon, almost all of our orders to Laverana started to be delayed or only partially filled, or not filled at all.  We never knew when products would be shipped, or how much of what we ordered would be in the shipments when they arrived.  By the summer of 2010, we were only receiving about 40% of the products we ordered.  After Ms. Francke left, Laverana also stopped communicating with us in a productive way.  Many emails and phone calls were ignored.  Laverana even stopped showing us its inventory so that we had no idea what products were available to order.

12.     During the same time period of 2010 and 2011, we began receiving many products from Laverana that were defective.  Many airless pump bottles for skin care items had pumps that were broken.  When we spoke to Laverana about this they told us to bang them on the table to make them work.  Also, we received powders and eye shadows that were broken, lipsticks that had broken lids, and makeup products containing rice germ that had turned rancid. These products were not fit for sale and we tried to get credit for the items, but had to argue with Laverana endlessly to get a credit for defective items. They still owe us credits for defective items in an amount of more than $50,000 today.

DECLARATION OF ULRIKE JACOB – 4

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

13. Laverana also began making unreasonable demands. In winter 2010, Laverana told us that LSC would have to start pre-paying for all of our orders. Until that time, we had ordered using a line of credit facility with Keybank or Sterling Bank, and this process had generally worked well for both parties. We received the goods and then advanced money to pay for them within 45 to 60 days after receipt of goods in our US warehouse.

Being forced to pre-pay was a hardship for LSC as we did not have the availability in our line of credit without the actual goods as collateral for the bank. I asked other export partners of Laverana, and Maia Francke, who else had to pre-pay after being a good customer for more than 10 years, and I was told LSC was the only one.

14. In 2011, Laverana also changed the language on its packaging. Up until that time, Laverana had packaged goods for sale in Canada in dual-language packaging, English and French. This is a requirement for all products sold in Canada. All of a sudden, Laverana refused to do this anymore. They told us we should put dual-language stickers on the products, however the stickers did not look good. Our Canadian sub-distributor Flora refused to accept the stickers. We then had boxes with French and English custom-made for Laverana's products at our expense, however Laverana refused to allow us to repackage the goods into these boxes. Prior to 2010, we had not had problems working with Laverana about packaging. For example, in 2008, Laverana changed its packaging after we told them that using the phrase skin "repair" would violate FDA regulations.

15. In 2010, Laverana also started causing problems with regulatory compliance. Laverana had appointed LSC as its authorized representative in the U.S. and Canada for obtaining product certifications from the Food and Drug Administration (FDA) and Health Canada. In 2010, the FDA implemented new regulations that required the manufacturer of certain sun screen products to be audited. Laverana refused to allow us to certify compliance with this regulation. Laverana terminated the sun screen product line for the North American market, which was 15% of LSC's sales.

DECLARATION OF ULRIKE JACOB – 5

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

16.     Laverana also refused to comply with new Health Canada regulations in 2012 that required manufacturers of certain products to register with the Canadian government and be able to import the goods into Canada.

17.     When we started having problems getting enough product from Laverana, I asked Laverana if LSC could sell products from other manufacturers.  I asked three times in 2010, verbally and in writing.  Laverana refused.

18.     I did everything in my power to help save my business and my customers that I had built from the ground up over 12 years. I flew to Germany three times and sent notices to Laverana that the situation was unbearable. I was ignored. I had to watch over 3 years as all I had built fell apart.

19.     All of these problems with Laverana caused our business to suffer greatly.  By the end of 2011, LSC had lost almost every major customer, including Target, Wegmans, CVS, Whole Foods, London Drugs, our Canadian sub-distributor Flora, and Drugstore.com.  In 2010, we had almost $5 million in sales.  In 2012, we had only $500,000.  In 2010, we had 20 employees.  By early 2012, we had let everyone go, and were down to only two employees.  Our CPA firm, Raymond Clarke and Co., produced an independent accounts' report finding that just in 2010 and 2011 LSC suffered gross profit losses of nearly $5 million dollars.  **Exhibit D**. Losses have continued since then.

20.     In 2012, we mutually agreed to mediate our claims against Laverana.  In July, we met in Germany for three days of mediation.  At the end of the session, the mediator suggested that the mediation continue by phone conference and email as we both seem to want to work towards a mutually beneficial solution.  We returned to Washington, and between July and December, 2012, we had about 15-20 phone mediation conferences with the mediator and Laverana.

21.     By December 2012, we had reached an agreement in principle for settlement of our claims.  Instead of finalizing the agreement, however, Mr. Haase cancelled and re-scheduled

DECLARATION OF ULRIKE JACOB – 6

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

several phone conferences in December and January.  Then, without warning, Laverana filed for trademark protection in the U.S. of the mark lavera on January 14, 2013.  My husband, Victor Tang purchased lavera.com in 2005, and LSC has used it continuously since 2006 to market and sell Laverana products.  *See* Declaration of Victor Tang.

22.     By trying to take control of our internet site, Laverana made it very clear that they did not want to settle our claims, and continue to be our partner.  Mediation discussions broke down.  Then, on March 27, 2013, Laverana sent us a letter stating that they were terminating the 2008 Distribution Agreement because LSC had not met revenue goals.  **Exhibit E**.  (The 2008 Distribution Agreement replaced the 1999 agreement between Laverana and Andreas Dewor.  The 2008 Distribution Agreement is between Laverana and LSC.  **Exhibit F**.)

23.     I have read the declaration of Thomas Haase.  It is wrong or incomplete in many instances.  First, Mr. Haase states in "Background Regarding Laverana" that Laverana has had no involvement in business within the United States or Washington.  *See* Haase Dec., ¶¶ 2-11.  The entire purpose of the 2008 Agreement between Laverana and LSC (and of the contractual relationship between Laverana and Ars Vivendi going back to 1999) was to make LSC the representative for Laverana in the U.S. market.  When I approached Mr. Haase in 1998, Laverana did not have the financial means or know how to start a business in the U.S., and they asked us to invest Deutsch Marks 100,000 (about $150,000), to develop the market back in 2000 – which we did.  Laverana also made LSC its agent for purposes of obtaining FDA registrations of Laverana products in the U.S.  **Exhibit G**.  And, until August 2013, Laverana's website listed LSC as its export partner in the U.S. and Canada and provided a link to our webpage.  **Exhibit H** contains historical snapshots of Laverana's webpage.

24.     Mr. Haase also states a very incomplete picture of visits by Laverana to meet with LSC in the U.S. and Canada.  At least once per year from 2000 to 2012, Laverana executives or managers came to trade shows in the U.S. and Canada to meet with us.  On these visits, we

DECLARATION OF ULRIKE JACOB – 7

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

would take Laverana to see displays of products we had placed in retail stores and meet with our clients at major tradeshows.  I remember specifically the following trips:

- Thomas Haase, Owner Laverana: Anaheim Natural Products Expo West 2002 with his son Phillip;

- Werner Oelschlaeger, Sales Manager Laverana: Baltimore Expo East 1999, Las Vegas Spa Show June 2000;

- Maia Francke, Export Manager Laverana: Anaheim Natural Products Expo West 2006, 2007, 2008 and London Drugs House event 2008, Seattle, WA and Vancouver, BC;

- Sonia Clarke-Czech, Export Manager, later International Export Director Laverana: 2005 Natural Products Expo West Anaheim, 2009 San Francisco and 2010 Natural Products Expo West

- Petra Scholl, Marketing Director Laverana: 2009 San Francisco

- Nadia Izmail, Export Manager Laverana: Natural Products Expo West 2010, Boston Natural Products Expo 2010 and Toronto Canadian Health Food Association (CHFA) East 2010.

During Ms. Francke's visit to Washington in 2008, she toured our facilities in Kirkland.

25.     Mr. Haase states that the 2008 Distribution Agreement was "negotiated, drafted, and executed in Germany." *See* Haase Dec., ¶ 18.  This is not correct.  In 2008, Laverana presented us with a new proposed contract via email, which they explained is the new standard contract with all export partners in order to unify their export businesses.  We received the contract in our office in Kirkland.  We replied with proposed changes by email, but Laverana refused to accept the majority of changes we proposed.  We used the yearly export meeting in Germany as a convenient place to sign the contract.

26.     Mr. Haase states that LSC took delivery of Laverana products in Germany.  *See* Haase Dec., ¶ 20.  That is not true, except for a period of time between1999 and 2003 when

DECLARATION OF ULRIKE JACOB – 8

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1  Laverana was having trouble packaging its goods for overseas delivery.  At all other times,

2  Laverana packaged its goods in boxes and on pallets for delivery to the U.S. and Canada, and

3  both Laverana and LSC arranged for shipment.  Also, as our order volumes had grown

4  significantly in 2009 and 2010, shipments were done using a documents against cash method so

5  that ownership and possession of the goods was taken when the goods reached the U.S. or

6  Canada, and the bank was able to lend us money against the goods and we paid Laverana upon

7  the arrival of goods at the border.  *See* Exhibit B.

8      27.    Mr. Haase states that Laverana had no involvement in LSC's business activities,

9  and "no control over where and when LSC would decide to sell the products." *See* Haase Dec., ¶

10  20.  That also is not true.  Under the terms of the 2008 Agreement, we had to present detailed

11  marketing plans and market reports in a specific manner and format including client data,

12  initiatives on the market, channels we distribute to, etc.  Laverana approved all marketing

13  materials and we had to follow corporate marketing standards that were set by Laverana. We

14  were not allowed to sell to other countries. We wanted to sell to other countries like Mexico and

15  Brazil and Laverana refused. Laverana knew very well what, where, how and how much we sold

16  on the market place.

17      28.    Mr. Haase also discusses mediation between Laverana and LSC in 2013.  *See*

18  Haase Dec., ¶¶ 24-27.  This discussion is very incomplete.  The mediation was one of many

19  times where we attempted to resolve a problem with Laverana.  Many meetings and negotiations

20  over the years happened in the U.S. in person while Laverana was visiting us here on the market

21  or via email.  The mediation involved eight months of negotiations of which only three days

22  were held in Germany in June 2012 and a 60-minute meeting in February 2013. The majority of

23  the time it was conducted while I was in Washington over phone and email.

24      29.    Mr. Haase also states that all evidence related to this case is in Germany.  *See*

25  Haase Dec., ¶¶ 30-34.  This is false.  All of LSC's losses took place in Washington State, and all

the documentation of our damages is here, including emails and complaints from clients and

DECLARATION OF ULRIKE JACOB – 9

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

communications with Laverana and other export partners about quality defects, delivery issues and ruthless business behavior by Laverana.  These documents are mostly in English.  In fact, most of the business correspondence over the years between Laverana and LSC and Ars Vivendi is in English, which is the standard language Laverana uses to communicate with all of its export partners.  Samples of such correspondence are attached as **Exhibit I**.  Also, the majority of the witnesses and the most important witnesses are here in Washington, including:

- Ulrike Jacob, Owner, LSC
- Carrie Rice, Accountant and now President, LSC
- Victor Tang, former E-commerce Manager LSC
- Vanessa Martin, Raymond Clarke and Company, Redmond, WA
- Christine Liu, KeyBank, Seattle, WA
- Michael Andrews, UPS Supply chain solutions Logistics, Auburn, WA
- Karissa Clevenger, former Sales Representative LSC
- Kim Davis, former Sales Representative LSC
- Scott Pfeiffer, former Controller, LSC
- David Ray, former Warehouse Manager LSC

Carrie Rice had many communication with Laverana in 2010 and 2011, and has knowledge of all of Laverana's breaches of the 2008 Agreement, including: refusing to fill orders; delaying deliveries; sending defective products; refusing to support registration with the FDA and Health Canada; and changing packaging.  Victor Tang is the owner of "lavera.com," and has knowledge of LSC's lawful use of "lavera.com."  Vanessa Martin has been LSC's CPA since 2006, and prepared the loss report attached as Exhibit D.  Christine Liu has been LSC's banker since 2007, and also has knowledge of our business and the problems.  Michael Andrews has knowledge of Laverana's many delivery delays and unreliable behavior. He helped us to establish a small credit facility with UPS when Laverana only would agree to ship goods to us under terms of pre-payment.  Karissa Clevenger and Kim Davis are former sales representatives who had many

DECLARATION OF ULRIKE JACOB – 10

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1  communications with upset clients since the problems with Laverana started. Representatives of

2  those clients are also located in Washington and the United States, not Germany. Scott Pfeiffer

3  was LSC's Controller in 2010, and attempted many communications with Laverana about its

4  breaches of the contract.

5      30.     The only witnesses not in Washington we think are important to our case are

6  Elizabeth Liu of Flora, who was our Canadian sub-distributor and Laverana's former export

7  manager, Maia Francke. I have spoken with both Ms. Liu and Ms. Francke, and they are both

8  willing to provide testimony in Washington or by videotape for this lawsuit.

9      31.     Lastly, Mr. Haase writes that Karen Rinne was LSC's "primary day-to-day

10  contact" from 2011 until March, 2012. *See* Haase Dec., ¶ 34. This is not true. Our primary

11  contacts in 2010, 2011, and 2012 were changing constantly and Laverana management assigned

12  a new Junior person to us every few months after Maia Francke had left. These Junior

13  Administrative people had no assigned decision making power and were not able to provide

14  solutions and each time ended up quitting after a brief term. Prior, we had Senior Account

15  Managers assigned and good working relationships for years.

16      I declare under penalty of perjury under the laws of the United States and Washington

17  that foregoing is true and correct.

18      Dated this 2 M day of May, 2014, in Kirkland, Washington.

19

20      _____
        Ulrike Jacob

21

22

23

24

25

DECLARATION OF ULRIKE JACOB – 11

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>CERTIFICATE OF SERVICE</u>

I certify that on May 5, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record for the parties.

*s/Leslie Nims*
Leslie Nims

DECLARATION OF ULRIKE JACOB – 12

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1052 01 ed162g29xx