UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LAVERA SKIN CARE NORTH AMERICA, INC., a Washington corporation; and VICTOR TANG, and individual,<br><br>          Plaintiffs,<br><br>     v.<br><br>LAVERANA GMBH & CO. KG, a German limited partnership,<br><br>          Defendant. | Case No. 2:13-cv-02311-RSM<br>_____<br><br>ORDER ON DEFENDANT'S MOTION TO DISMISS |

This matter comes before the Court upon Motion to Dismiss by Defendant Laverana GmbH & Co. KG ("Laverana"). Dkt. # 14. Defendant seeks dismissal of the Complaint brought by Plaintiffs Lavera Skin Care North America, Inc. ("LSC") and Victor Tang on the grounds of lack of personal jurisdiction and *forum non conveniens*. Having considered the parties' moving papers, supporting exhibits, and oral arguments on this matter, and for the reasons provided herein, the Court grants Defendant's Motion in part and dismisses this action for *forum non conveniens*.

## BACKGROUND

Plaintiffs LSC and Victor Tang filed this suit against Defendant Laverana on December 26, 2013 under this Court's diversity jurisdiction. Dkt. # 1 ("Compl."). The action arises out of alleged breaches of the distribution agreement between the Germany natural cosmetics company, Laverana, and its exclusive North American distributor, the Washington

ORDER ON MOTION TO DISMISS – 1

corporation LSC. Plaintiffs' Complaint states claims against Laverana for breach of contract, breach of covenants of good faith and fair dealing, breach of fiduciary duty, breach of warranty, and declaratory relief that Plaintiffs have a valid continuing right to use the domain name "lavera.com." *See id.*.

Defendant Laverana is a German limited partnership in the business of developing, producing, and selling natural cosmetics from its principal place of business in Germany. Laverana was founded by its still ultimate sole shareholder and German citizen and resident Thomas Haase in the 1990s. *See* Dkt. # 16-1 (Haase Decl.), ¶ 1. In 1999, Ulrike Jacob and her then husband, Andreas Dewor, aspiring to reach what they believed to be an untapped market for natural cosmetics in the U.S. and Canada, became Laverana's first international distribution partners. The initial distribution agreement was executed by Dewors and Haase, although the North American distribution was affected through Jacob's then Californian company, Ars Vivendi. Dkt. # 19 (Jacob Decl., ¶¶ 3-5). Following her divorce from Dewor, Jacob founded LSC in 2006 as a Washington corporation to take over distribution from Ars Vivendi. Jacob remains LSC's sole shareholder and a Washington resident, although she also possesses German citizenship and speaks fluent German. *Id.* at ¶ 7, Haase Decl. at ¶ 13.

The parties to this litigation entered into the operative 2008 Distribution Agreement (the "Agreement"), covering the years 2009 through 2015, which forms the basis for LSC's claims. *See* Haase Decl. at Ex. 2 ("Agreement"), § 1(f). The Agreement was drafted in German and English but provides that only "the German version shall be binding." *Id.* at § 15. The English-language version of the Agreement provides that "German law shall be applicable except for the conflict of laws provisions and the provisions of the Private International Law" and that the "place of jurisdiction shall be Hanover, Germany." *Id.* at § 13.

Plaintiffs allege that by early 2010, LSC was selling nearly $5 million of Laverana's products annually in as many as 4,000 stores in the U.S. and Canada. Compl., ¶ 6, Jacob Decl., ¶ 8. Plaintiffs contend that their relationship with Laverana began to sour at this point, with Laverana failing to deliver products on time, to provide sufficient products to meet demand, and to respond to LSC's product orders, in addition to delivering defective products unfit for sale. Compl., ¶ 10. Additionally, Plaintiffs assert that Laverana for the first time refused to provide goods for sale in Canada in dual-language packaging, significantly

ORDER ON MOTION TO DISMISS – 2

impacting Canadian distribution, and refused to comply with new regulatory requirements for sale in the U.S. and Canada. *Id.* at ¶ 11.

Following an unsuccessful attempt at mediating their grievances in Germany, Laverana sent LSC a letter on March 27, 2013 stating that it was terminating the 2008 Distribution Agreements because LSC failed to perform under the contract. Dkt. # 16 (Haase Decl.) at Ex. 4; Compl. at ¶ 13. On December 4, 2013, Laverana commenced an administrative proceeding against LSC and Jacob's current spouse, Victor Tang, before the World Intellectual Property Organization ("WIPO"), alleging that Plaintiffs were improperly using the domain name "lavera.com" in violation of Laverana's trademark rights. Compl. at ¶ 14. The WIPO administrative panel dismissed Laverana's complaint on January 25, 2014, finding no evidence of bad faith use and noting that Laverana's claims largely depend on this Court's determination of the instant dispute. *See* Dkt. # 20 ("Tang Decl.) at Ex. 3. Plaintiffs allege that Tang had purchased the domain name from a third party in 2006, since which time he has licensed use of the domain name to LSC. *Id.* at ¶ 15. In addition to their contractual claims in the instant action, Plaintiffs seek declaratory judgment that Tang and LSC's use of the word "lavera" in LSC's internet address does not violate Laverana's trademark rights. Compl. at ¶ 14.

In support of Plaintiffs' jurisdictional allegations, Jacob attests that not all products were delivered by Laverana "ex works," according to which the seller is deemed to have delivered at the point that it places the goods at the disposal of the buyer at the seller's premises. Rather, Jacob attests that in 2009 and 2010, Laverana made shipments using a "documents against payments" method, meaning that goods were not released until they reached the Canadian or U.S. border. Jacob Decl. at ¶ 6. As to goods delivered "ex works", Jacob asserts that Laverana itself packaged the goods and had them shipped to LSC in the U.S. and Canada. *Id.* Jacob also attests that Laverana executives or managers attended trade shows in the U.S. and Canada to meet with LSC at least once per year from 2000 to 2012 and that Ms. Francke toured LSC's Kirkland facilities in 2008. *Id.* at ¶ 24. She also asserts that although the 2008 Agreement was executed in Germany, it was negotiated via email between the parties in Germany and Washington, and that it provided Laverana with significant control over marketing and distribution channels. *Id.* at ¶¶ 25, 27.

ORDER ON MOTION TO DISMISS – 3

**MOTIONS TO STRIKE**

Plaintiffs move to strike portions of the declaration of Defendant's expert Dr. Björn-Axel Dissars (Dkt. # 15) (Dissars Decl.), filed in support of Defendant's motion to dismiss. Dkt. # 18-1. Plaintiffs contend that the expert testimony should be disregarded because: (1) Dissars is an interested party and his testimony includes conclusions of law; (2) Dissars attached mediation correspondence, which is improper under FRE 408; and (3) Dissars relies upon inadmissible hearsay evidence.

As an initial matter, Defendant correctly points out that Plaintiffs' motion to strike is procedurally improper. LCR 7(g) requires that a motion to strike be included in a responsive brief rather than, as here, presented in a separate motion. On this ground alone, the Court may decline to consider the motion. *See Khadera v. ABM Industries, Inc.*, 2011 WL 7064235, *6 n. 9 (W.D. Wash. 2011) (declining to consider a motion to strike that failed to comply with LCR 7(g)).

The Court also declines to strike based on the merits of Plaintiffs' request. Dr. Dissars' declaration is offered to aid the Court in its assessment of foreign law. The Federal Rules of Civil Procedure explicitly permit the court to consider testimonial evidence for this purpose, even if such evidence would not be admissible under the Federal Rules of Evidence. *See* Fed. R. Civ. P. 44.1; *see also Universe Sales Co., Ltd. v. Silver Castle, Ltd.*, 182 F.3d 1036, 1038 (9th Cir. 1999) (finding expert declaration interpreting foreign law admissible under Fed. R. Civ. P. 44.1 and explaining that "expert testimony accompanied by extracts from foreign legal materials had been and will likely continue to be the basic mode of proving foreign law"). As to evidence of compromise negotiations, such evidence is not offered and the Court shall not consider it for the purpose of evaluating any of the claims or defenses or the amount in dispute but only as relevant to its jurisdictional analysis, a use not prohibited by Federal Rule of Evidence 408. *See* Fed. R. Evid. 408(b) (allowing admission of evidence of compromise negotiations for any non-prohibited use). Finally, Federal Rule of Evidence 703 permits hearsay, upon which an expert relies, to be admitted to explain the basis of the expert's opinion. *See Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261-62 (9th Cir. 1984). The Court accordingly declines both to strike hearsay statements in the Dissars opinion (Dissars Decl. at ¶ 35, 40, 42-45) and to consider them for the truth of the matter asserted, though it

notes that the same content is also testified to by Haase based on his personal knowledge. *See* Haase Decl. at ¶¶ 4-5, 18, 30.

Plaintiffs have additionally filed a seven-page surreply in order to respond to issues of law advanced for the first time upon reply by Defendant. *See* Dkt. # 23. Plaintiffs' surreply is also in contravention of the local rules, which strictly limit surreplies to three pages and to argumentation exclusively addressing a request to strike material contained in an opposing party's reply brief. *See* LCR 7(g)(2), (3). Rather than request that the Court strike the improper portions of the reply brief, Plaintiffs have substantively responded to Defendant's analysis, and they have done so without first filing a notice of intent to file a surreply as required by the local rules. *See* LCR 7(g)(1). As the Court explained at oral argument, it does not take procedural breaches lightly. Nonetheless, it shall consider both the full reply brief and the surreply in order to ensure resolution of the instant dispute on its merits and as the parties had an opportunity to fully explore the relevant issues through their briefing and through oral argument. *See, e.g., Ellingson v. Burlington N., Inc.*, 653 F.2d 1327, 1332 (9th Cir. 1981), *superseded by rule on other grounds as stated in PAE Gov't Servs., Inc.,* 514 F.3d 856, 859 n. 3 (9th Cir. 2007).

## DISCUSSION

Laverana has moved for dismissal on the basis of both *forum non conveniens* and personal jurisdiction, and the Court finds it appropriate to begin its analysis with the former ground. Where, as here, doing so would have the effect of promoting judicial economy, the "district court has discretion to respond at once to a defendant's *forum non conveniens* plea, and need not take up first any other threshold objection," including matters of personal jurisdiction. *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 425 (2007).

**A. Standard for Dismissal under Forum Non Conveniens**

The district court has discretion to dismiss an action under the doctrine of *forum non conveniens* when litigation in a foreign forum would be more convenient for the parties. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002); *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). The district court's decision is ordinarily entitled to substantial deference. *Lueck*, 236 F.3d at 1142. Nonetheless, in the typical case, dismissal on

the grounds of *forum non conveniens* is considered an "exceptional tool" that must be "employed sparingly." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000). To prevail, Defendant bears the burden to show (1) that there is an adequate alternative forum, and (2) that the balance of private and public factors favors dismissal. *Dole Food*, 303 F.3d at 1118. A strong presumption exists in favor of the plaintiff's choice of forum, which ordinarily will not be disturbed unless the private and public interest factors strongly favor trial in the foreign forum. *Id.*; *Piper Aircraft Co. v. Reyno*, 454 U.S. 241 (1981). Taking these factors into account, the court considers whether the defendant seeking dismissal has made "a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience." *Dole Food*, 303 F.3d at 1118.

Here, Defendant contends that the ordinary *forum non conveniens* test does not apply. Defendant relies on the Supreme Court's recent decision in *Atlantic Marine Const. Co. v. U.S. Dist. Court*, 134 S.Ct. 568 (2013), in which the Court modified the *forum non conveniens* analysis where a valid and enforceable forum-selection clause is implicated. Because the courts are to protect the legitimate, bargained-for contractual expectations of the parties, "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* at 579 (internal quotations and alteration omitted). To ensure this result, the Court altered the usual *forum non conveniens* analysis in three ways. First, it provided that the "plaintiff's choice of forum merits no weight." *Id.* at 581 "Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained for is unwarranted." *Id.* Second, the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum" because the parties waived private arguments about convenience when they agreed to the forum-selection clause. *Id.* And third, "when a party bound by a forum-selection clause flouts its contractual obligations and files suit in a different forum" a *forum non conveniens* motion "will not carry with it the original venue's choice of law rules." *Id.* at 582.[1] As a whole, the

---

[1] Although the Supreme Court's analysis was largely directed to a motion to transfer under 28 U.S.C. § 1404(a), the Court emphasized that the analysis is identical for a *forum non conveniens* and a § 1404(a) motion, as the latter is "merely a codification of the doctrine of *forum non conveniens* for the subset of caces in which the transferee forum is within the federal court system." *Atlantic Marine*, 134 S.Ct. at 580.

ORDER ON MOTION TO DISMISS – 6

*Atlantic Marine* test both narrows and flips the burden of persuasion, placing the burden on the plaintiff (the party violating the forum-selection clause) to show that "public-interest factors overwhelmingly disfavor a transfer." *Id.* at 483.

That a forum-selection clause exists in the parties' bargained-for agreement does not end the inquiry. As Plaintiffs point out, the forum-selection clause considered by the *Atlantic Marine* Court was a mandatory one, which provided that the chosen forum shall exercise exclusive jurisdiction over any issues arising under the operative contract. *See id.* at 575 (considering forum-selection clause, which stated that all disputes between the parties "shall be litigated in the Circuit Court for the Eastern District of Virginia, Norfolk Division"); *id.* at 581-82 (stating that a plaintiff's choice of forum should be accorded no weight "when a plaintiff agrees by contract to bring suit *only* in a specified forum") (emphasis added). Where a forum-selection clause is instead permissive, the vast majority of courts that have addressed the issue have rejected *Atlantic Marine*'s application and applied the traditional *forum non conveniens* test. *See, e.g*, *Fin. Cas. & Sur., Inc. v. Parker*, 2014 WL 2515136, at *3 (S.D. Tex. 2014) (noting courts have "consistently declined to apply *Atlantic Marine*" when analyzing a permissive forum selection clause); *Networld Communications, Corp. v. Croatia Airlines, D.D.*, 2014 WL 4724625, at * 2 (D.N.J. 2014). *RELCO Locomotives, Inc. v. AllRail, Inc.*, 2014 WL 1047153, at * 8 (S.D. Iowa 2014); *Residential Fin. Corp. v. Jacobs*, 2014 WL 1233089, at *3 (S.D. Ohio 2014); *United States ex. Rel. MDI Servs., LLC v. Fed. Ins. Co.*, 2014 WL 1576975, at *3 (N.D. Ala. 2014); *but see Compass Bank v. Palmer*, 2014 WL 355986, at *5 (W.D. Tex. 2014); *United Am. Healthcare Corp. v. Backs*, 997 F.Supp.2d 741, 750 (E.D. Mich. 2014). This district has also recognized the relevance of the distinction in determining whether the *Atlantic Marine* test applies. *See Taylor v. Goodwin & Assoc. Hospitality Services, LLC*, 2014 WL 3965012 (W.D. Wash. 2014) (applying *Atlantic Marine* only upon determining the forum selection clause to be mandatory). So have the only courts of appeals that have considered the issue. *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1029-30 (11th Cir. 2014) (remanding for determination of whether the contract "contains a mandatory forum-selection clause" that would implicate *Atlantic Marine*); *Waste Mgmt. of Louisiana, LLC v. Jefferson Parish*, 2014 WL 6713203 (unpublished opinion) (5th

Cir. 2014) (denying leave to appeal from interlocutory order upon recognizing "heavily lopsided nature of the post-*Atlantic Marine* split in the district courts).

In interpreting the instant forum-selection clause, the Court follows the weight of precedent within this Circuit to apply federal law, irrespective of the Agreement's choice-of-law provision selecting German law. *See, e.g.*, *Manetti-Farrow, Inc. v. Gucci Am. Inc.*, 858 F.2d 509, 513 (9th Cir. 1988) (recognizing circuit split but holding nonetheless that "because enforcement of a forum clause necessarily entails interpretation of the clause before it can be enforced, federal law applies to interpretation of forum selection clauses"); *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009) ("We apply federal law to the interpretation of the forum selection clause."); *Kilan v. Boston Scientific Corp.*, 2011 WL 1261130 (N.D. Cal. 2011) ("The Ninth Circuit has held that a district court, sitting in diversity, must interpret forum selection clauses under federal common law, without regard to any choice of law provision in the subject agreement."); *Sigma Six Technologies, Inc. v. Nagarro, Inc.*, 2009 WL 2031771, at **4-5 (N.D. Cal. 2009) (applying federal law to question of whether forum-selection clause was mandatory or permissive, notwithstanding choice-of-law provision specifying German law); *Indoor Billboard Northwest Inc. v. M2 Systems Corp*, 922 F.Supp. 2d 1154, 1160 (D. Or. 2013); *but see E & J Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 987 (9th Cir. 2006); *Martinez v. Bloomberg LP*, 740 F.3d 211 (2d Cir. 2014). Under federal law, a mandatory clause "clearly require[s] *exclusive* jurisdiction." *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987). That is, to be considered mandatory, the clause's language must require "that the designated courts are the only ones which have jurisdiction." *Id.* at 77-78. By contrast, a permissive clause manifests consent to jurisdiction in the designated forum but "does not mean that the same subject matter cannot be litigated in any other court." *Id.* at 77.

Here, the English-language version of the clause reads: "The place of jurisdiction shall be Hanover, Germany." Plaintiffs contend that such a clause, specifying jurisdiction only, is permissive. *See Docksider, Ltd.*, 875 F.2d at 764 ("The prevailing rule is clear…that where venue is specified with mandatory language the clause will be enforced. When only jurisdiction is specified the clause will generally not be enforced.") Plaintiffs further contend that the controlling German-language version does not provide otherwise. The German

ORDER ON MOTION TO DISMISS – 8

version of the clause reads: "Gerichtsstand ist Hannover, Deutschland." Plaintiffs concede that the meaning of "gerichtsstand" is ambiguous and may be translated as either "place of jurisdiction" or "place of venue." Dkt. # 18, p. 22. Plaintiffs contend that such ambiguity should be construed against the drafter. They further argue that the wording manifests the parties' intent to make jurisdiction non-exclusive, as they would otherwise have included the Germany word for "exclusive," "ausschließlich," used elsewhere in the Agreement to denote exclusivity. *Id.* at p. 21.

Applying federal law, the Court agrees that the forum-selection clause is best interpreted as permissive. The English-language version of the clause parallels that found to be permissive by the Ninth Circuit in *Hunt Wesson Food, Inc. v. Supreme Oil Co.*, 817 F.2d 75. In *Hunt Wesson*, the forum-selection clause provided that the "courts of California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or interpretation of the contract." 817 F.2d at 76. Considering the plain meaning of the clause's language, the court concluded that this language "mandates nothing more than that Orange County courts have jurisdiction." *Id.* at 77. Here too, the fact that the parties have consented to jurisdiction in a given court does not "mean that the same subject matter cannot be litigated in any other court." *Id.* The Court also agrees with Plaintiffs that the German-language version of the clause does not change this analysis. Under federal common law, a "fundamental rule of contract interpretation is that where language is ambiguous the court should construe the language against the drafter of the contract." *Id.* at 78. Construing the ambiguous meaning of "gerichtsstand" against Laverana, the undisputed drafter of the Agreement, leads to the conclusion that the German version also provides only that jurisdiction, but not necessarily venue, shall lie in Hanover, Germany. The fact that the contract was actually so translated, coupled with the absence of language denoting exclusivity, lends further support to this conclusion.

Accordingly, the Court applies the traditional *forum non conveniens* analysis and finds that, even where the playing field is slanted against it, Defendant has carried its heavy burden to overcome the strong presumption favoring Plaintiff's choice of forum.

**B. Application of the Traditional Forum Non Conveniens Test**

Importantly, Plaintiffs do not dispute that Germany provides an available and adequate alternative forum to try their claims. Both LSC and Laverana have already contractually agreed to submit to jurisdiction in Hanover, Germany, and, as a German limited partnership, Laverana is amenable to service of process in Germany. *See* Agreement at § 13; Dissars Decl., ¶ 16. As testified to by Dr. Dissars, the German Civil Code provides a standard three-year statute of limitation for contract claims, which begins to commence at the end of the year in which the claim, or Plaintiffs' knowledge of the circumstances giving rise thereto, arose and which is tolled during the course of negotiations. Dissars Decl., ¶ 16. Plaintiffs consequently have until at least 2016 to file suit in Germany, which provides an available alternative forum for their suit. *See id.* Germany is also an adequate forum for Plaintiffs to bring their claims.  The parties do not dispute that regardless of forum, claims brought under the Distribution Agreement are governed by German law, in accordance with its choice-of-law provision. *Id.* at ¶ 18. German law provides causes of action related to performance of contractual duties and permits remedies sought by Plaintiffs in the form of monetary damages, pre-judgment interest, attorneys' fees, and declaratory relief. *Id.* at ¶ 20. Finally, the Court is persuaded, and Plaintiffs present no argument to the contrary, that German courts provide the appropriate procedural safeguards to ensure a fair and just resolution of the instant dispute. *See* ¶¶ 22-25.

Having found an adequate alternative forum, the Court considers whether the balance of public and private factors favors dismissal. *See Dole Food*, 303 F.3d at 1118.

**(1) Private Interest Factors**

The Court begins by considering factors relating to the parties' private interests. Such factors include:

> (1) the residence of the parties and the witness; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witness can be compelled to testify; (5) the costs of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Boston Telecommunications Group, Inc. v. Wood*, 588 F.3d 1201, 1206-07 (9th Cir. 2009) (quoting *Lueck*, 367 F.3d at 1145).

The first three factors, which test the relative convenience of the competing fora, as a whole favor Defendant. Laverana, Haase, Laverana's managing director, and all of Laverana's shareholders are German citizens or entities. Haase Decl. at ¶¶ 3, 8. Laverana's principal representatives speak only German and have limited, if any, personal experience in the United States. *Id.* at ¶¶ 9-11. Suit in Washington would burden them not only with the inconvenience of travel but would also necessitate extensive translation services. Similarly, Laverana identifies a number of probable witnesses relevant to liability –including its head of marketing and export, former head of sales, and LSC's primary contacts with Laverana – all of whom reside in Germany. *Id.* at ¶¶ 32-34. Ms. Jacob herself testifies to the materiality of LSC's former export manager at Laverana, the German resident Maia Francke, as a witness to LSC's claims. *See* Jacob Decl., ¶ 9. On the other hand, Ms. Jacob, though a Washington resident, is also a German citizen, fluent in the language and possessing significant ties to and experience in Germany, including through negotiations conducted with the assistance of German counsel. Haase Decl. at ¶¶ 13-14, 25. While Laverana employs over 200 individuals, LSC has only a single current employee in addition to Jacob, its president and Washington resident Carrie Rice. Jacob Decl. at ¶ 29. And while LSC testifies to a number of Washington-resident witnesses, it concedes that, apart from Jacob, Rice, and Tang, their testimony is principally relevant to the question of damages rather than predicate issues of liability. *Id.*

So too, the locus of evidence tilts, albeit slightly, toward Germany. Documentary evidence belonging to Laverana regarding the negotiation, execution, performance, and termination of the 2008 Distribution Agreement is located in Germany and primarily in the German language, as are Laverana's purchase orders, billing records, and potentially key documents pertaining to its decisions to retain or terminate product lines. Haase Decl. at ¶ 31. The scale remains tilted toward the convenience of the German forum, even when the balance of LSC's English-language records, relevant primarily to its damages case, are taken into account. *See* Jacob Decl. at Exs. B-D.

The fourth and fifth private interest factors also weigh in favor of litigation in Germany. Were this action to proceed in the instant Court, U.S. federal subpoena power is limited in its ability to order production of documents and appearance of non-party witnesses in Germany. *See* Fed. R. Civ. P. 45(c); *see also Leuck*, 236 F.3d at 1146-47; *DTex, LLC v.*

ORDER ON MOTION TO DISMISS – 11

*BBVA Bancomer, S.A.*, 508 F.3d 785, 799 (5th Cir. 2007). While it may be possible to take deposition testimony from witnesses located in Germany, doing so would be, according to Dr. Dissars, both burdensome and potentially fruitless given Germany's objections to assisting common law courts in pre-trial discovery requests. Dissars Decl., ¶¶ 30-32. As such, Plaintiffs may not have access to material witnesses to their case, including Maia Francke. On the other hand, German courts possess power of compulsory process over any witnesses and evidence located in Germany. *Id.* at ¶ 33. The predominance of documentary evidence and material witnesses in Germany also suggests that the costs of litigation will be reduced through use of the German forum.

Finally and critically, there are significant concerns with the enforceability of any judgment against Laverana that this Court may render. As Laverana's assets and property are located in Germany, a German judgment would be readily enforceable against the company. *Id.* at ¶ 39; *see also U.S. Vestor, LLC v. Biodata Info. Tech AG*, 290 F.Supp. 2d 1057, 1068 (N.D. Cal. 2003) ("Judgment would be enforceable in Germany since all Defendants own property there."). In contrast, the absence of a relevant bilateral treaty means that a judgment against Laverana entered by this Court is not directly enforceable in Germany. Dissars Decl. at ¶ 36. According to Dr. Dissars' expert opinion, to be enforceable, the judgment must first be "recognized" in Germany. *Id.* at ¶ 36. Were the German court to find that this Court adjudicated the dispute without jurisdiction under German law, it could decline to enforce the judgment, rendering the entirety of these proceedings for naught. *Id.* at ¶ 38.

In light of the likely interpretation of the Agreement's forum-selection clause under German law, it is quite probable that a German court would indeed find this Court lacking in jurisdiction. German case law and authorities suggest that the instant clause would be interpreted to provide exclusive jurisdiction in Hanover, Germany, despite the absence of language denoting exclusivity. *See, e.g.,* Dkt. # 22 (Second Dissars Decl.), ¶ 3 (discussing cases) ("Germany's highest court of civil matters, the German Federal Court of Justice (*Bundegerichtshof*), and other German courts, have repeatedly held that when a party contractually agrees to jurisdiction in its home country—as Defendant did here—the forum selection clause should be interpreted as providing the exclusive forum for claims against that party."); *id.* at ¶ 3(d) (explaining that "express language denoting 'exclusivity' (e.g.

'*ausschliebligh*') is not necessary to make a forum selection clause mandatory under German law"); *id.* at Ex. 10, p. 1 (German treatise *Muenchener Kommentar* ZPO (4th ed. 2013) § 38 ¶ 42) (Where "legal jurisdiction was determined to be in another country and the party whose home courts are called to make the decision is being brought to court…the jurisdiction of the foreign courts is, as a rule, exclusive, because the party being brought to court has an interest in the application of its home laws."); *see also Future Industries of Am., Inc. v. Advanced UV Light GMBH*, 2010 WL 7865077 (D. Conn. 2010) (determining that choice-of-law provision that "courts of Essen, Germany shall have jurisdiction for all disputes" is mandatory under Germany law), *aff'd* 434 Fed.App'x 46 (2d Cir. 2011). The parties thus face a substantial risk that a German court called upon to enforce a judgment by this Court would refuse to do so, finding the operative contract to render sole jurisdiction in Germany.

(2) **Public Interest Factors**

The Court must also consider factors relating to the public interest. Such factors include:

> (1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum.

*Boston Telecomms.,* 588 F.3d at 1211 (quoting *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006)).

The first factor requires the Court to "ask only if there is an identifiable local interest in the controversy, not whether another forum also has an interest." *Id.* Here, Washington does have an identifiable interest in protecting the bargained-for rights and expectations of its residents. The second factor clearly favors the German forum. In affirming a motion to dismiss a suit to recover attorney's fees on the basis of *forum non conveniens*, the Ninth Circuit found that the district court's lack of familiarity with German law "weighs especially heavily in favor of the German courts. Not only is the district court unfamiliar with German law, were it to hear the case it would be required to translate a great deal of that law from the German language, with all the inaccuracy and delay that such a project would necessarily entail." *Leetsch v. Freedman*, 260 F.3d 1100, 1105 (9th Cir. 2001); *see also Loya v. Starwood Hotels & Resorts*, 2007 WL 1991163 at * 9 (W.D. Wash. 2007) ("The fact that this Court will

ORDER ON MOTION TO DISMISS – 13

be asked to untangle conflicts of laws and apply the law of Mexico, which is foreign, weight in favor of dismissal."), *aff'd* 583 F.3d 656 (9th Cir. 2009). Here too, this Court will be called to the arduous task of accurately applying German substantive law to Plaintiffs' contractual claims and interpreting German regulatory laws governing consumer products as they relate to possible defenses.

The capacity of the respective judicial systems to efficiently adjudicate this dispute also tilts somewhat toward the German forum. The Court takes judicial notice of publicly accessible statistical tables indicating that the average time for trial in Hanover is 13.6 months, as opposed to 20.1 months in this Court. *See* Dkt. # 17, Dissars Decl., ¶¶ 26-27. Finally, as provided *supra*, cost considerations point toward Germany as well. Were this Court to retain jurisdiction, translation would be required for the bulk of documentary evidence relating to liability, for relevant sources of law, and for many of the material witnesses.

### (3) Dismissal on *Forum Non Conveniens* Grounds

Considering all of these factors, the Court concludes that Laverana has shouldered its heavy burden to show that the difficulties of litigating in Plaintiffs' chosen forum definitively outweigh the convenience to Plaintiffs. First, Germany clearly provides an adequate and available alternative forum for this dispute, and indeed the parties have already consented to subject themselves to jurisdiction in Laverana's home state. Second, the nucleus of this case rests in Germany, where the German-language contract was executed, Defendant is located, the bulk of material witnesses and evidence reside, and whose law by mutual assent governs the parties' claims and defenses. A judgment against Laverana would also be readily enforceable if rendered in Germany, while it is probable that Plaintiffs would encounter a severe struggle seeking to enforce a judgment rendered by this Court.

A "United States citizen has not absolute right to sue in a United State court." *Mizokami Bros of Arizona, Inc. v. Baychem Corp.*, 556 F.2d 975 (9th Cir. 1977). Plaintiffs' prerogative to litigate against a foreign company in their home forum will be disturbed when all reasonable considerations lead to the conclusion that the appropriate site for the litigation is elsewhere. Such is the case here.

**CONCLUSION**

For the reasons stated herein, the Court hereby ORDERS that Defendant's Motion to Dismiss (Dkt. # 14) is GRANTED. Because Germany provides an adequate and more convenient forum for this litigation, this action is DISMISSED on the basis of *forum non conveniens*.

Dated this 19th day of December 2014.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE